United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLA ELIZABETH MARTINEZ, <br> Plaintiff, <br> v. <br> NAPA STATE HOSPITAL, et al., <br> Defendants. | Case No. 23-cv-04247-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Re: Dkt. Nos. 19, 22 |

Defendants have moved for judgment on the pleadings, asking that the Court dismiss this entire case. The Court held a hearing on June 14, 2024. For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART defendants' motion. Plaintiff Martinez shall have the opportunity to amend any claims that are dismissed. **Martinez's amended complaint is due July 19, 2024.**

## BACKGROUND

### I. Factual Background

For purposes of today's motion the Court assumes, without deciding, that the allegations in the complaint are true. According to the complaint, plaintiff Marcella Elizabeth Martinez was an involuntarily committed patient at Napa State Hospital during the relevant time period. Dkt. No. 1 ("Compl.") ¶¶ 2, 9.

Within three or four days of her arrival at Napa State Hospital, Martinez made a report complaining about the behavior of another patient, Lynssey Braun. *Id.* ¶ 25. The complaint alleges that "Braun, who has male genitalia and identifies as female, was admitted into the female ward at Napa State Hospital" after "being declared legally insane for second degree murder." *Id.* ¶ 26.

Martinez reported to the treatment team that Braun "liked" Martinez and that Braun's romantic advances were making Martinez uncomfortable. *Id.* ¶ 27. The treatment team did nothing in response. *Id.*

The next morning, Martinez made a second report to the treatment team, informing them that the night before "Braun had suddenly become verbally aggressive with Plaintiff because Plaintiff told Braun that she did not want to have a romantic or sexual relationship with Braun." *Id.* ¶ 28. Braun called Martinez names and aggressively made a hand gesture as if firing a handgun at her. *Id.* In response to the second report, defendant Doe Unit Supervisor told plaintiff to move her belongings to the next room over, but the treatment team "took no other step to protect Plaintiff." *Id.* ¶ 30.

About three weeks later, Martinez made her third report. *Id.* ¶ 31. She reported that Braun had violated her in the women's restroom two days prior. Braun "asked for sex including oral sex." *Id.* Plaintiff responded, "no." *Id.* The complaint states, "While Plaintiff was getting dressed after showering in one of the two shower stalls, Braun slid the shower curtain open and asked if Plaintiff wanted to see Braun's penis. Plaintiff vehemently told Braun she did not and told Braun to leave her alone." *Id.* The treatment team did nothing in response to this report. *Id.* ¶ 33.

On or about April 4, 2020, at about 5:20 p.m., Braun attacked Martinez with a deadly weapon with the intent of murdering her, because Martinez had not agreed to engage in sexual activity with Braun. *Id.* ¶ 34. The complaint alleges that at that time "the doors to the bedrooms had not been locked, in violation of the established policy of the facility." *Id.* Further, "Napa State Hospital personnel were not regularly performing environmental or locker check procedures." *Id.* ¶ 36. Following the attack, Martinez had to be taken to a local medical facility, and Braun was booked on $50,000 bail on charges of felony assault with a deadly weapon and misdemeanor battery. *Id.* ¶ 35. The complaint alleges that Braun had acted similarly with two other patients in 2019 and 2020 and that the treatment team completely disregarded these prior attacks. *Id.* ¶ 37.

**II.   Procedural History**

On November 6, 2020, Martinez (represented by counsel) filed suit in Napa County Superior

1    Court against defendants Napa State Hospital, the California Department of State Hospitals
2    ("DSH"), Cindy Black, and Does 1-50.[1]  *Martinez v. Napa State Hosp.*, Case No. 20-cv-08631, Dkt.
3    No. 1 at 8. Defendants removed the action to federal court on December 7, 2020. *See generally id.*,
4    Dkt. No. 1. The case was assigned to the undersigned Judge. *Id.*, Dkt. No. 6. On March 29, 2021,
5    the parties filed a stipulation seeking a 120-day stay of the case for all purposes, to allow Martinez
6    to seek her release from DSH. *Id.*, Dkt. Nos. 13, 14. The parties stipulated to, and the Court
7    approved, several extensions of the stay. *Id.*, Dkt. Nos. 17, 18, 21, 22, 23, 24. At status conferences
8    in November and December 2022, the parties advised the Court that they were working on a tolling
9    agreement to dismiss the claims while Martinez remained in the custody of the state hospital. *Id.*,
10   Dkt. Nos. 26, 29, 31. On December 5, 2022, Martinez—through her counsel—voluntarily dismissed
11   the action without prejudice, "pursuant to joint agreement to toll the statute." *Id.*, Dkt. No. 33.

12   On August 21, 2023, Martinez (now representing herself) filed the current suit against the
13   same defendants. The complaint is identical to the complaint she filed with counsel in state court
14   in November 2020. Martinez brings eight claims: (1) 42 U.S.C. § 1983 – Civil Rights Violations –
15   Substantive Due Process; (2) 42 U.S.C. § 1983 – Supervisor Liability – Failure to Set Policy; (3) 42
16   U.S.C. § 1983 – Supervisor Liability – Fostering an Unconstitutional Policy or Custom; (4) 42
17   U.S.C. § 1983 – Supervisor Liability – Failure to Train or Supervise; (5) Negligence; (6) Negligent
18   Supervision; (7) Vicarious Liability; and (8) Premises Liability.[2] Martinez seeks: general damages
19   of $10 million; special damages of $10 million; future medical expenses; punitive damages;
20   prejudgment interest; and attorney's fees and costs. Compl. at 19.

21   Defendants answered the complaint on November 21, 2023. Dkt. No. 9. Defendants now
22   move for judgment on the pleadings, asking that the Court dismiss this entire case. Dkt. Nos. 19,

---

[1] In a similar case brought against Napa State Hospital and the California Department of State Hospitals, Judge Alsup of this district observed: "DSH and NSH are the same entity. Although the hospital where plaintiff is an inpatient is colloquially referred to as 'Napa State Hospital,' it is actually 'Department of State Hospitals – Napa.'" *Brackin v. California Dep't of State Hosps.*, No. C 15-03351 WHA, 2016 WL 3185021, at *1 n.* (N.D. Cal. June 8, 2016).

[2] The Court refers to the eight causes of action listed in the complaint interchangeably as "Claims" and "Causes of Action."

22.[3]  Martinez filed an opposition brief, attaching numerous documents.  Dkt. No. 28.  Defendants filed a reply brief.  Dkt. No. 29.

**LEGAL STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a suit "[a]fter the pleadings are closed . . . but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  The court must accept "all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).  "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law."  *Lyon v. Chase Nat'l Bank, USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (quoting *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005)).

**DISCUSSION**

**I.    Immunity**

**A.    Eleventh Amendment**

Defendants first argue that they are immune from suit under the Eleventh Amendment.  The Eleventh Amendment to the U.S. Constitution bars suits seeking damages against the State, including an "arm of the State" such as a state agent or agency.  *See Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005); *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422-23 (9th Cir. 1991).  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Beentjes*, 397 F.3d at 777 (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).

Under most circumstances, defendant Napa State Hospital and the California Department of

---

[3] Defendants filed duplicates of their motion at Dkt. Nos. 19 and 22.  Citations in this Order are to the motion filed at Dkt. No. 22.

State Hospitals would be entitled to Eleventh Amendment immunity in a federal suit for damages because they are state agencies or "arms of the State." *See Quintero v. Napa State Hosp.*, 990 F.2d 1259, 1993 WL 79476, at *1 (9th Cir. 1993) (unpublished) (affirming the dismissal of an action against Napa State Hospital under Eleventh Amendment immunity, finding "[i]t is apparent beyond a doubt that appellants could allege and prove no set of facts in support of the claim against Napa State Hospital which would entitle them to relief"); *Diggs v. California Dep't of State Hosp.*, No. 19-cv-06517-EMC, 2020 WL 5428654, at *1 & n.1 (N.D. Cal. Sept. 10, 2020) (dismissing claims against Napa State Hospital and DSH based on Eleventh Amendment immunity). Defendant Cindy Black would also be immune from suit, to the extent she is sued in her official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985).

However, defendants removed this case from state to federal court, thereby consenting to federal court jurisdiction over all claims. *See Martinez v. Napa State Hosp.*, No. 20-cv-08631, Dkt. No. 1 (Notice of Removal, filed Dec. 7, 2020). A state's removal of a case to federal court constitutes a waiver of Eleventh Amendment immunity as to the entire case, including both state and federal claims and claims that are added after the case is removed. *Embury v. King*, 361 F.3d 562, 565-66 (9th Cir. 2004) (discussing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002)); *see also Walden v. Nevada*, 945 F.3d 1088, 1094 (9th Cir. 2019) (extending *Embury* to cover all federal law claims, even when those federal claims are ones Congress did not apply to the states).

In *Embury*, the state had removed the case to federal court. Following removal, the district court granted the state's motion to dismiss, with leave to amend. The plaintiff amended the complaint, and the state then argued it was immune under the Eleventh Amendment. The district court rejected this argument. On appeal, the state argued that because the complaint was amended after removal, the state could not have anticipated all of the claims they were agreeing to subject to federal court jurisdiction back when they first removed the case. The Ninth Circuit affirmed the denial of Eleventh Amendment immunity because, "by removing, the State affirmatively invoked the Judicial power of the United States over the suit, not just the claims that had already been made." *Embury*, 361 F.3d at 565 (internal quotation marks and citations omitted). The Ninth Circuit opined,

"Allowing a State to waive immunity to remove a case to federal court, then 'unwaive' it to assert that the federal court could not act, would create a new definition of chutzpah." *Id.* at 566. The *Embury* court explained that it would "hold to a straightforward, easy-to-administer rule in accord with *Lapides*: Removal waives Eleventh Amendment immunity." *Id.*

Likewise here, defendants DSH and Black waived their Eleventh Amendment immunity when they removed the original case from state court to federal court in December 2020.[4] Martinez then re-filed her case (using the exact same complaint and naming the exact same defendants) in this Court, following the tolling agreement and dismissal entered into in the prior case. For purposes of sovereign immunity, the Court finds that the current case is simply a continuation of the previous one. Defendants may not now invoke Eleventh Amendment immunity where they already affirmatively removed the exact same case to federal court.

Accordingly, the Court DENIES defendants' bid for Eleventh Amendment immunity.

### B.     Specific Immunity Under Government Code Section 854.8

DSH argues that it is immune from suit, and that Claims Seven and Eight against it should be dismissed, under California Government Code section 854.8. Dkt. No. 22 at 19-20. That statute states that, *unless certain exceptions apply*, "a public entity is not liable for: (1) An injury proximately caused by a patient of a mental institution. (2) An injury to an inpatient of a mental institution. . . ." Cal. Gov't Code § 854.8(a). DSH argues it is immune under both of these subsections.

---

[4] At the hearing, defense counsel incorrectly represented to the Court that Black had not been sued in the prior action and then questioned whether Black ever made an appearance in that case. The Court *sua sponte* (on its own) takes judicial notice of the docket in *Martinez v. Napa State Hosp.*, No. 20-cv-08631 (N.D. Cal. filed Dec. 7, 2020). *See* Fed. R. Evid. 201. In that earlier case, Martinez named the same exact defendants: Napa State Hospital, California Department of State Hospitals, and Cindy Black. *Martinez v. Napa State Hosp.*, Case No. 20-cv-08631, Dkt. No. 1 at 8. The same counsel represented the defendants. The Notice of Removal was filed on behalf of "Defendants State of California by and through Department of State Hospitals, and Cindy Black[.]" *Martinez v. Napa State Hosp.*, Case No. 20-cv-08631, Dkt. No. 1 at 1; *see also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1224 (9th Cir. 2009) ("In a case involving multiple defendants, all defendants must join in a removal petition.") (citation, internal brackets, and quotation marks omitted).

1      Section 854.8, however, is subject to the exception stated in Government Code section 855.

2 Cal. Gov't Code § 854.8(a) (listing section 855 as one of the exceptions). That statute states, in

3 relevant part:

> A public entity that operates or maintains any medical facility that is subject to regulation by the State Department of Health Services, Social Services, Developmental Services, or Mental Health is liable for injury proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or facilities required by any statute or any regulation of the State Department of Health Services, Social Services, Developmental Services, or Mental Health prescribing minimum standards for equipment, personnel or facilities, unless the public entity establishes that it exercised reasonable diligence to comply with the applicable statute or regulation.

10 Cal. Gov't Code § 855(a). The California Court of Appeal has explained that "Government Code

11 section 855 was intended to impose liability only when the statute or regulation sets forth a specific

12 standard that gives the public medical facility clear notice as to the minimum requirements with

13 which it must comply." *Lockhart v. Cnty. of Los Angeles*, 155 Cal. App. 4th 289, 308, (2007), *as

14 modified* (Sept. 19, 2007), *as modified* (Oct. 4, 2007). "A regulation setting forth a general policy

15 goal is insufficient if it 'does not specifically direct the manner in which that goal is to be attained.'"

16 *Brackin*, 2016 WL 3185021, at *7 (N.D. Cal. June 8, 2016) (quoting *Lockhart*, 155 Cal. App. 4th at

17 308).

18      Here, the complaint alleges that Martinez was attacked after DSH negligently allowed "a

19 dangerous condition to fester on the property including but not limited to failing to lock doors to

20 patient rooms, checking on patients, protecting against known violence, protecting against sexual

21 attacks and assault, and failing to ensure environmental and locker checks were conducted." Compl.

22 ¶ 101. However, the complaint does not identify any statute or regulation "prescribing minimum

23 standards for equipment, personnel or facilities," such that DSH could be liable for an inpatient

24 attack on another patient under Government Code section 855. *See Brackin*, 2016 WL 3185021, at

25 *7-8 (granting motion for judgment on the pleadings regarding state law claims against DSH, where

26 the regulations identified in the complaint used language that was "too broad to fit within the narrow

27 exception of Section 855"). As to Claim Seven specifically, which is brought for "Vicarious

28 Liability," the California Court of Appeal has held that the vicarious liability statute, California

7

1  Government Code section 815.2, is "merely a general liability provision" that "is trumped by the
2  specific immunity provision of section 854.8." *State Dep't of State Hosps. v. Super. Ct.*, 84 Cal.
3  App. 5th 1069, 1076 (2022).
4  The Court therefore GRANTS defendants' motion for judgment on the pleadings as to
5  Claims Seven and Eight. The Court will give plaintiff the opportunity to amend these claims to
6  allege an exception under California Government Code section 855.[5]

**II.     Statute of Limitations and Tolling**

**A.      Tolling Agreement**

Defendants argue that this case is untimely. Both parties attach to their briefs a letter entitled "Dismissal and Tolling Agreement," dated December 1, 2022. Dkt. No. 23, Ex. F; Dkt. No. 28, Ex. C.[6] The letter, from defense counsel to Martinez's former civil counsel, reads:

> I confirm our agreement where plaintiff will agree to dismiss her case of *Marcella Elizabeth Martinez v Napa State Hospital et al.*, Unites [sic] States District Court, Northern District of California, Case No. 3:20-cv-08631-SI, against defendant Department of State Hospitals, without prejudice; and in exchange, defendant Department of State Hospitals agrees that all applicable statutes of limitations, to the extent they have not yet lapsed, will be tolled from the date of dismissal, until 4 months after plaintiff is discharged and released from DSH.
> After that date, all applicable statutes of limitations shall apply.

*Id.* Defendants now argue that Martinez's federal and state law claims have expired because they had already "lapsed" before the tolling agreement the parties entered into on December 1, 2022.[7]

---

[5] Because the Court finds that DSH is immune from liability under Government Code section 854.8, the Court does not address DSH's alternative arguments that it has derivative immunity from Claim Seven, that Martinez has failed to plead a statutory basis for liability under Claims Seven and Eight, or that Martinez has failed to allege sufficient facts for premises liability under Claim Eight. *See* Dkt. No. 22 at 16-18.

[6] The Court GRANTS defendants' request for judicial notice, pursuant to Federal Rule of Evidence 201. *See* Dkt. No. 23. Exhibits A-D are Martinez's government claims and the government's responses. Exhibit E is the complaint in the prior lawsuit. Exhibit F is the tolling agreement, which is identical to the one that Martinez attaches to her opposition brief. The Court does not take judicial notice of any disputed facts contained in these documents or of any party's interpretation of these documents, such as whether plaintiff's claim presentation to the government was valid and whether defendants' interpretation of the tolling agreement is correct.

[7] There is some confusion around when Martinez was released from Napa State Hospital. Defendants' papers state, without citation, that she was released on December 1, 2022. *See* Dkt.

8

With regard to Claims Seven and Eight against DSH, defendants say Martinez needed to bring these claims within a certain time period after the government rejected her state law claims, under California Government Code Section 945.6. Dkt. No. 22 at 15. According to defendants, plaintiff needed to file her state law claims by May 6, 2021, and that period "by definition was excluded from the tolling agreement on December 1, 2022, because that time period had already lapsed."[8] Dkt. No. 22 at 16. Defendants make no mention of the timely suit that Martinez filed in November 2020. The Court has serious doubts about the logic and fairness of defendants' argument. Nevertheless, because the Court has granted judgment to DSH on Claims Seven and Eight under the specific immunity regarding mental hospital patients, the Court will not separately address defendants' argument that Claims Seven and Eight are untimely under the California Tort Claims Act.

With regard to the federal claims under Section 1983, defendants also argue that these claims were filed too late. They argue that the claims are too late because the assault occurred on April 4, 2020, and the current case was filed on August 21, 2023.

The statute of limitations for claims under 42 U.S.C. § 1983 is "the personal injury statute of limitations of the state in which the cause of action arose." *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011). In California, "[b]y legislation that became effective on January 1, 2003, the statute of limitations . . . [is] two years." *Andonagui v. May Dep't Stores Co.*, 128 Cal. App. 4th 435, 440 (2005) (citing Cal. Civ. Proc. Code § 335.1). During the Covid-19 pandemic, California tolled the statute of limitations for civil actions that exceed 180 days from

---

No. 22 at 10. At the hearing, Martinez stated that she was physically released from Napa State Hospital to go to court on July 21, 2022, but that the court order releasing her from Napa State Hospital did not issue until December 1, 2022.

[8] An action against a governmental entity or employee covered by the claims-presentation requirement, explained further in Section IV below, must be filed within six months following written notice of rejection of the claim. *See* Cal. Gov't Code § 945.6(a)(1). During the Covid-19 pandemic, California tolled the statute of limitations for civil causes of action that are 180 days or less from April 6, 2020, until August 3, 2020, effectively giving Martinez an additional 119 days to file her state claims. *See* Cal. Rules of Court, App'x 1: Emergency Rules Related to COVID-19, Emergency Rule 9.

April 6, 2020, to October 1, 2020. Cal. Rules of Court, App'x 1: Emergency Rules Related to COVID-19, Emergency Rule 9. Defendants therefore argue that, including the Covid-19 extension, plaintiff's federal claims should have been filed by September 29, 2022. Dkt. No. 22 at 23.

Although Martinez filed her original suit within the statute of limitations in November 2020, defendants now argue: "Although DSH and Plaintiff entered a Dismissal and Tolling Agreement on December 1, 2022, that agreement did not re-open any lapsed time period. That agreement had no effect on the 2-year statute of limitations (plus 177 days for Covid) because it already lapsed by the time of that agreement." *Id.* at 24.

Defendants' argument completely ignores that Martinez timely filed a court action that *was still pending* on December 1, 2022, when the parties entered into the tolling agreement. If defendants' interpretation were correct, then the tolling agreement would have been completely meaningless the moment the parties signed it. Nothing in the language of the tolling agreement supports defendants' position, nor can the Court condone such an unfair reading. The Court finds that Martinez's Section 1983 claims had not yet lapsed as of December 1, 2022, because those claims were part of a timely-filed lawsuit that was *still ongoing* against defendants.[9]

### B.     Other Tolling Doctrines

Even if the Court were to agree with defendants' reading of the tolling agreement, the Court cannot find based on the record before it that dismissal on statute of limitations grounds is proper because Martinez's Section 1983 claims are subject to equitable and statutory tolling. In California, a plaintiff may be entitled to equitable tolling where there is: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second

---

[9] On the record before it, the Court rejects defendants' argument that the Tolling Agreement did not apply to defendant Black because she is not specifically named as the client in the December 1, 2022 letter from defense counsel to plaintiff. *See* Dkt. No. 22 at 24. Defense counsel represented to the Court at the case management conferences in November and December 2022 that this tolling agreement would result in a dismissal of the entire case. Without evidence to the contrary, the Court is left to assume that the omission of Black's name from the December 1, 2022 letter was defense counsel's drafting error, perhaps related to whatever error caused defense counsel to incorrectly assert at the hearing that he had not represented Black in the prior action.

1  claim." *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003) (citation omitted).  Given
2  that Martinez brought the exact same claims against the exact same defendants, who were served
3  and who appeared in the action, the Court finds that equitable tolling applies to toll the period from
4  November 6, 2020, when the first case was filed, through December 5, 2022, when that case was
5  voluntarily dismissed.

6  Additionally, California Civil Procedure Code section 352.1 recognizes imprisonment as a
7  disability that tolls the statute of limitations for a period not to exceed two years, where the plaintiff
8  is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a
9  term of less than for life." Cal. Civ. Proc. Code § 352.1(a).  The tolling is not indefinite, however;
10 the disability of imprisonment delays the accrual of the cause of action for a maximum of two years.
11 *See id.*  Thus, an inmate has up to four years to bring a Section 1983 claim for damages in California,
12 i.e., the regular two-year period under California Civil Procedure Code section 335.1 plus up to two
13 years during which accrual was postponed due to the disability of imprisonment.  Here, Martinez
14 alleges in the complaint that she was involuntarily committed to Napa State Hospital, and she
15 attaches to her opposition brief a document from her then-pending criminal case.  Compl. ¶ 9.; Dkt.
16 No. 28, Ex. E.  The Court *sua sponte* takes judicial notice of the docket in the state court criminal
17 action against Martinez for the purpose of noting that Martinez was in custody on criminal charges
18 at the time her claim in this case accrued.  *See* Fed. R. Evid. 201; *People v. Martinez*, No. F085368,
19 2023 WL 7144629 (Cal. Ct. App. Oct. 31, 2023) (unpublished).  She therefore is entitled to an
20 additional two years for filing her Section 1983 claim under California Civil Procedure Code section
21 352.1.

22 It therefore appears from the complaint and from the documents subject to judicial notice
23 that Martinez's Section 1983 claims were timely filed in August 2023, under either the doctrine of
24 equitable tolling (due to the filing of her original lawsuit) or under statutory tolling (due to her
25 imprisonment on criminal charges).

26 The Ninth Circuit has explained that a complaint cannot be dismissed based on the running
27 of the statute of limitations "unless it appears beyond doubt that the plaintiff can prove no set of
28 facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States,* 68

11

1    F.3d 1204, 1206 (9th Cir. 1995) (citations omitted).  On equitable and statutory grounds, Martinez's

2    Section 1983 claims were timely, even without regard to the parties' tolling agreement.

### III.     Section 1983 Claims Against Defendant Black

Defendants ask the Court to grant judgment in favor of defendant Black on Claims Two through Five, arguing that the complaint: fails to allege participation by defendant Black in depriving Martinez of a constitutional right; and fails to allege the specific constitutional right Martinez claims was violated.

Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

The Court generally agrees with defendants that the complaint does not adequately identify the federal right at stake in Claims Two through Five, nor does the complaint adequately allege Black's involvement in depriving Martinez of her rights.[10]  For instance, the Third Cause of Action, "42 U.S.C. § 1983 – Unconstitutional Policy," alleges generally that certain "established policies" at the hospital were not being followed, *see* Compl. ¶ 63, but it does not assert the violation of a federal right.  The Third Cause of Action alleges that "Defendants Black, Doe Chief Protective Services and Security and Does 1-50 knowingly refused to intervene and ensure personnel were following established policies, including locking the doors to patient rooms and conducting environmental and locker checks." *Id.* ¶ 64.  However, there are no facts alleged that Black herself knew of staff's failure to lock patient rooms.

"A plaintiff must allege facts, not simply conclusions, that show that an individual was

---

[10] It is unclear whether the Fifth Cause of Action, labeled "Negligent Failure to Protect," is brought under California state law or under federal Section 1983.  Martinez should clarify this when amending the complaint.

12

personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980)); *see also Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (in civil rights suit against state, county, and individual defendants, instructing that the complaint should tie "its factual allegations to particular defendants"). At this stage of the case, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These facts must add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Claims Two through Five do not identify the federal right that Martinez alleges was violated and because the complaint does not allege facts plausibly showing Black's involvement in a violation of Martinez's rights, the Court will GRANT judgment on the pleadings on Claims Two through Five as to defendant Black. Martinez may amend these claims when she files an Amended Complaint.

## IV. Negligent Supervision (Claim Six)

The Sixth Cause of Action is for negligent supervision, against defendants Black, Doe Chief Protective Services and Security, and Does 1-50. Defendants argue that "there are no allegations [Martinez] timely submitted the required Government Claim naming Black, prior to filing suit." Dkt. No. 22 at 22-23.

The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred to as the California Government Claims Act by the courts, *see City of Stockton v. Super. Ct*., 42 Cal. 4th 730, 741-42 (2007) -- requires a person to present her claim to the California Victim Compensation and Government Claims Board ("Board") before she may file an action for damages against a California governmental entity or employee "for death or for injury to person or to personal property." Cal. Gov't Code § 911.2; *see* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2. The Government Claims Act has strict time limits for filing such a claim with the Board and for filing an action in court after the rejection of such a claim. A claimant must present her claim to the Board

13

1   within six months of the accrual of the cause of action.  *See* Cal. Gov't Code § 911.2.  Additionally, an action against a governmental entity or employee covered by the claims-presentation requirement must be filed within six months following written notice of rejection of the claim by the Board.  *See* Cal. Gov't Code § 945.6(a)(1).

Here, defendants' own requests for judicial notice show that Martinez presented her first government claim, naming Napa State Hospital, on June 10, 2020.  Dkt. No. 23, Ex. A.  That claim was rejected on July 8, 2020.  *Id.*, Ex. B.  On August 25, 2020, Martinez presented an amended government claim, adding Black and alleging negligent supervision.  *Id.*, Ex. C.  The California Department of General Services rejected the claim on September 9, 2020.  *Id.*, Ex. D.  In other words, Martinez filed the amended government claim naming Black within six months from the April 4, 2020 incident.  State law allows a government claim for bodily injury to be amended any time before six months after the accrual of the cause of action "or before final action thereon is taken by the board, whichever is later, if the claim as amended relates to the same transaction or occurrence which gave rise to the original claim.  The amendment shall be considered a part of the original claim for all purposes."  Cal. Gov't Code §§ 910.6, 911.2.  Martinez filed suit in court on November 6, 2020, within six months of the accrual of the cause of action, and within six months of receipt of the claim rejection.  Nothing about this history indicates that Martinez filed her state claims too late.

The Court DENIES defendants' motion for judgment on the Sixth Cause of Action.

## V. Doe Defendants

The complaint brings causes of action against a number of Doe defendants: Doe Dr. Ferster, Doe Dr. J., Doe Unit Supervisor, Doe Clinical Social Worker, Doe Chief Protective Services and Security, and Does 1-50.

Although the use of "Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wiltsie v. Cal. Dep't of Corrections*, 406 F.2d 515, 518 (9th Cir. 1968), situations may arise where the identity of alleged defendants cannot be known prior to the filing of a complaint.  In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery

14

would not uncover their identities or that the complaint should be dismissed on other grounds. *See Gillespie*, 629 F.2d at 642; *Velasquez v. Senko*, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986).

An important next step in this case will be for Martinez to identify the Doe defendants.

### VI. Resources for Self-Represented Litigants

The Court reminds Martinez that resources are available for parties who are representing themselves in the Northern District of California. The Court encourages all self-represented litigants to consult with the Federal Pro Bono Project (sometimes also called the Legal Help Center), though this is optional. To schedule an appointment with the Legal Help Center, email fedpro@sfbar.org or call (415) 782-8982. Messages are returned within two business days.

The Northern District of California website also has various resources available, including a Pro Se Handbook about how to represent oneself in court. These resources are available online at: https://www.cand.uscourts.gov/pro-se-litigants/.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby **DENIES** defendants' motion for judgment on the pleadings on statute of limitations and Eleventh Amendment immunity grounds. The Court **DENIES** the motion for judgment on the pleadings as to Claim Six.

The Court **GRANTS** the motion for judgment in favor of defendant Black, on Claims Two through Five, with leave to amend. The Court **GRANTS** the motion for judgment in favor of DSH as to Claims Seven and Eight, with leave to amend.

**Martinez shall file her amended complaint by July 19, 2024.** If plaintiff gets a lawyer and the lawyer needs more time to amend the complaint, she may ask the Court for an extension.

**IT IS SO ORDERED**.

Dated: June 21, 2024

SUSAN ILLSTON
United States District Judge