UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLA ELIZABETH MARTINEZ,<br>Plaintiff,<br>v.<br>NAPA STATE HOSPITAL, et al.,<br>Defendants. | Case No. 23-cv-04247-SI<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 47 |

The Department of State Hospitals[1] filed a motion to dismiss plaintiff's claims against it on the basis of statutory immunity and the failure to state a valid claim. For the reasons stated below, the Court GRANTS the motion. All claims against the Department of State Hospitals—and Napa State Hospital, as the same entity—are DISMISSED. The unchallenged claims against the individual defendants will proceed.

**BACKGROUND**

**I.    Factual Background**

The background facts are recited more fully in the Court's prior order granting in part and denying in part defendants' motion for judgment on the pleadings. *See* Dkt. No. 32 ("Prior Order"). Here, as in the Prior Order, the Court assumes that the allegations of the complaint are true for purposes of deciding the motion to dismiss.

---

[1] In a similar case brought against Napa State Hospital and the California Department of State Hospitals, Judge Alsup of this district observed: "DSH and NSH are the same entity. Although the hospital where plaintiff is an inpatient is colloquially referred to as 'Napa State Hospital,' it is actually 'Department of State Hospitals – Napa.'" *Brackin v. California Dep't of State Hosps.*, No. C 15-03351 WHA, 2016 WL 3185021, at *1 n.* (N.D. Cal. June 8, 2016).

To briefly summarize, plaintiff Marcella Elizabeth Martinez was an involuntarily committed patient at Napa State Hospital beginning on February 24, 2020. Dkt. No. 46 ("SAC") ¶¶ 2, 22. Upon plaintiff's arrival, she was assigned to Unit T-11, which "consists of a series of dormitory-style rooms connected by a hallway with a single bathroom and shower facilities for all patients housed in the unit." *Id.* ¶ 17. Each room contains four beds and plaintiff was assigned to a bedroom that was also occupied by Lynnsey Eva Karla Braun. *Id.* ¶¶ 18, 23. According to the complaint, "Braun has male genitalia, and Braun's original birth certificate identified Braun's gender as male. However, Braun self-identifies as female." *Id.* ¶ 24. Braun had been admitted to Napa State Hospital after being charged with second degree murder and adjudicated not guilty by reason of insanity. *Id.* ¶ 25.

Shortly after plaintiff's arrival in the unit, Braun made "sexual and romantic advances" toward her, then began harassing her when she denied these advances. *Id.* ¶¶ 36, 41-42. Braun asked plaintiff for sex in the shared bathroom facilities. *Id.* ¶¶ 52-53. Braun then asked plaintiff if she wanted to see Braun's penis while plaintiff was dressing after a shower. *Id.* ¶ 54. Plaintiff complained to her treatment team about Braun's behavior three times. *Id.* ¶¶ 37, 43, 46, 56. The unit supervisors responded by moving plaintiff to an adjacent bedroom. *Id.* ¶ 49. Subsequently, on or about April 4, 2020, Braun encountered plaintiff in the hallway, directed plaintiff into a bedroom, then attacked plaintiff with a deadly weapon, inflicting "extensive lacerations [to] her head." *Id.* ¶¶ 59-71. Braun was charged with attempted murder and assault with a deadly weapon. *Id.* ¶ 74.

**II.     Procedural Background**

On November 6, 2020, Martinez (represented by counsel) filed suit in Napa County Superior Court against defendants Napa State Hospital, the California Department of State Hospitals ("DSH"), Cindy Black, and Does 1-50. *Martinez v. Napa State Hosp.*, Case No. 20-cv-08631, Dkt. No. 1 at 8. Defendants removed the action to federal court on December 7, 2020. *See generally id.*, Dkt. No. 1. The case was assigned to the undersigned Judge. *Id.*, Dkt. No. 6. The parties stipulated to a stay while plaintiff sought her release from DSH. On December 5, 2022, plaintiff—through her counsel—voluntarily dismissed the action without prejudice, "pursuant to joint agreement to toll the

2

statute." *Id.*, Dkt. No. 33.

On August 21, 2023, plaintiff (representing herself) filed the current suit against the same defendants. Dkt. No. 1. Defendants answered the complaint on November 21, 2023. Dkt. No. 9. Defendants then filed a motion for judgment on the pleadings, which the Court granted in part and denied in part on June 20, 2024. Dkt. No. 32. The Court gave plaintiff the opportunity to amend the complaint and stayed the proceedings for plaintiff to be appointed pro bono counsel. Dkt. Nos. 33-34. After plaintiff's new counsel was appointed by the Court, plaintiff filed a First Amended Complaint ("FAC"). Dkt. Nos. 35-36. The FAC asserted ten claims for relief against the same collection of defendants. Dkt. No. 36. Defendant Cindy Black answered the FAC, but defendant DSH moved to dismiss the claims against it from the FAC, citing Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 41-42. After an initial round of written briefing on the motion to dismiss, the parties stipulated to the filing of a Second Amended Complaint ("SAC"). Dkt. Nos. 44-45. Plaintiff filed the SAC on November 26, 2024 and defendant DSH has again moved to dismiss under Rule 12(b)(6).[2] Dkt. No. 47. The SAC contains eight claims, but only the three claims asserted against DSH are at issue here: Negligence (Claim 5), Vicarious Liability (Claim 7), and Premises Liability (Claim 8).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the

---

[2] Defendant Black has not filed a responsive pleading to the SAC, but since the SAC asserts the "same material allegations" against her as the FAC, the Court does not require her to file a new responsive pleading. *See KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 715 (9th Cir. 2020).

speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

## DISCUSSION

DSH argues that each of the three claims asserted against it fail both because of statutory immunity and because plaintiff has failed to state a valid claim. Dkt. No. 47 ("Mot.").

### I.   Immunity from State Law Claims

Under California law, unless certain exceptions apply, "a public entity is not liable for: (1) An injury proximately caused by a patient of a mental institution.  (2) An injury to an inpatient of a mental institution." Cal. Gov't Code § 854.8(a). Section 854.8, however, is subject to the exception stated in Government Code section 855. *Id.* Section 855 states, in relevant part:

> A public entity that operates or maintains any medical facility that is subject to regulation by the State Department of Health Services, Social Services, Developmental Services, or Mental Health is liable for injury proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or facilities required by any statute or any regulation of the State Department of Health Services, Social Services, Developmental Services, or Mental Health prescribing minimum standards for equipment, personnel or facilities, unless the public entity establishes that it exercised reasonable diligence to comply with the applicable statute or regulation.

Cal. Gov't Code § 855(a). The California Court of Appeal has explained that "Government Code section 855 was intended to impose liability only when the statute or regulation sets forth a specific standard that gives the public medical facility clear notice as to the minimum requirements with which it must comply." *Lockhart v. Cnty. of Los Angeles*, 66 Cal. Rptr. 3d 62, 76-77, (Cal. Ct. App. 2007), *as modified* (Sept. 19, 2007), *as modified* (Oct. 4, 2007). "A regulation setting forth a general

4

policy goal is insufficient if it 'does not specifically direct the manner in which that goal is to be attained.'" *Brackin*, 2016 WL 3185021, at *7 (N.D. Cal. June 8, 2016) (quoting *Lockhart*, 66 Cal. Rptr. 3d at 77).

In its prior order, the Court found DSH immune under section 854.8 because the complaint

> [did] not identify any statute or regulation "prescribing minimum standards for equipment, personnel or facilities," such that DSH could be liable for an inpatient attack on another patient under Government Code section 855. *See Brackin*, 2016 WL 3185021, at *7-8 (granting motion for judgment on the pleadings regarding state law claims against DSH, where the regulations identified in the complaint used language that was "too broad to fit within the narrow exception of Section 855").

Prior Order at 7-8. The Court granted plaintiff leave to amend "to allege an exception under California Government Code section 855." *Id.* at 8.

Plaintiff attempts in her SAC to remedy this deficiency, arguing DSH failed to meet several statutory or regulatory requirements. Specifically, plaintiff contends DSH violated California Penal Code section 4002 and sections 71115 and 71619 of title 22 of the California Code of Regulations.[3] The Court considers each provision in turn.

### A.     Penal Code Section 4002

California Penal Code section 4002 states, in relevant part:

> Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed upon civil process, shall not be kept or put in the same room, **nor shall male and female prisoners, except spouses, sleep, dress or undress, bathe, or perform eliminatory functions in the same room**.

Cal. Pen. Code § 4002(a) (emphasis added). Plaintiff argues this section applies to patients in California state mental hospitals, that DSH violated this statute by placing Braun with women patients, and that this violation excepts DSH from immunity pursuant to Government Code section 855. SAC ¶¶ 78-83; Opp'n at 7-9.

DSH argues that Penal Code section 4002, located within a chapter of the Penal Code that

---

[3] The SAC also cites sections 71213 and 71569 of title 22 of the California Code of Regulations, but plaintiff disclaimed reliance on these two sections in her opposition. SAC ¶¶ 91-98; Dkt. No. 49 ("Opp'n") at 11.

5

1  details requirements for the administration of county jails, does not apply to state mental hospitals
2  that house patients, not prisoners. Mot. at 8. Plaintiff insists in opposition that the term "prisoner"
3  must be construed broadly to include individuals civilly committed to state hospitals. Opp'n at 8.
4  In support, plaintiff relies on two older cases. First, in *People v. White*, 2 Cal. Rptr. 202, 203 (Cal.
5  Ct. App. 1960), the court considered a person adjudicated as a "psychopathic delinquent,"
6  committed to a state hospital, then transferred to San Quentin Prison could be considered a
7  "prisoner" for the purpose of a criminal statute prohibiting a "prisoner" from carrying a weapon.
8  Second, in *Jiminez v. County of Santa Cruz*, 116 Cal. Rptr. 878, 879 (Cal. Ct. App. 1974), the court
9  determined a ward of the juvenile court placed in a foster care facility was a "prisoner" for purposes
10 of a statute providing public entities immunity for injuries to prisoners. DSH replies to plaintiff's
11 contention by noting how more recent statutory language clarifies that the Legislature considers
12 persons in state mental hospitals as "patients to be provided care and treatment and not as inmates
13 of institutions for the purposes of secluding them from the rest of the public." Dkt. No. 51 ("Reply")
14 (quoting Cal. Welf. & Inst. Code § 4132).

15 The Court is not persuaded that Penal Code section 4002 applies to the placement and
16 housing of patients in state mental hospitals. "It is a fundamental canon of statutory construction
17 that the words of a statute must be read in their context and with a view to their place in the overall
18 statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also Poole
19 v. Orange Cnty. Fire Auth.*, 354 P.3d 346, 350 (Cal. 2015) [noting that statutes are not read in
20 isolation]. Section 4002 falls within a chapter and title of the Penal Code dedicated to the
21 administration of county jails, alongside titles that regulate imprisonment in state prisons. Sections
22 4000 and 4001, also concerning the different categories of detained persons, explicitly reference
23 county jails. Section 4002(c) refers to requirements placed on a county, not a state facility.

24 The Court is not aware of any case law that applies the requirements of Section 4002 to
25 confinement in a state mental hospital. The Legislature has chosen to regulate the administration of
26 state mental hospitals in an entirely different code—the Welfare & Institutions Code, via section
27 4100 et seq. and section 7200 et seq. Within that code, the Legislature emphasized the persons
28 committed to these hospitals are "patients," not "inmates." Cal. Welf. & Inst. Code § 4132. Further,

the code specifies that "the uniform rules and regulations of the State Department of State Hospitals" governs the administration of these facilities. *Id.*, § 7201. And while these code chapters occasionally reference patients who have been placed in state hospitals due to provisions of the Penal Code, *see*, *e.g.*, §§ 7200.03, 7228, 7350, nowhere has the Legislature explicitly applied the institutional management guidelines within the Penal Code to state hospitals.

In short, plaintiff cannot use Penal Code 4002 to defeat DSH's statutory immunity.

### B.     Code of Regulations, Title 22, Section 71115

Plaintiff next contends that DSH violated standards set by section 71115 of title 22 of the California Code of Regulations. SAC ¶¶ 84-88. That section states in relevant part,

> (a) Architectural plans shall not be approved and a license shall not be originally issued to any hospital which does not conform to: the regulations in this chapter; state requirements on seismic safety, fire and life safety and environmental impact and local fire safety, zoning and building ordinances. Evidence of such compliance shall be presented in writing to the Department.
>
> (b) It shall be the responsibility of the licensee to maintain the hospital in a safe structural condition. . . .

Cal. Code Regs. tit. 22, § 71115. Plaintiff maintains that DSH has violated this regulation because its bathroom facilities do not meet the criteria for unisex bathrooms in the California Building Code. SAC ¶¶ 84-87; Opp'n at 9. Since DSH allowed Braun to use the women's bathroom, plaintiff argues the bathroom was effectively a unisex facility. *Id.* DSH responds that this regulation relates to the granting of the original license and does not present an ongoing duty to conform to regulations, and further that "zoning and building ordinances" refers to local laws, not the state building code. Reply at 4-5.

The Court agrees with DSH that this regulation does not help plaintiff evade defendant's statutory immunity, but need not dive into the distinctions between local building ordinances and the state building code. The only ongoing responsibility placed on operating hospitals by this regulation is to remain in a "safe structural condition." Cal. Code Regs. tit. 22, § 71115(b). The structural condition of the hospital did not proximately cause plaintiff's injury and is not at issue in this case.

7

### C. Code of Regulations, Title 22, Section 71619

Lastly, plaintiff relies on section 71619 of the same regulatory title, which provides: "A method of assuring privacy for each patient shall be maintained in patient rooms and in tub, shower and toilet rooms." Cal. Code Regs. tit. 22, § 71619. DSH argues that this regulation does not prescribe any "minimum standards" so the exemption of Government Code 855 cannot attach. Mot. at 9-10. DSH is correct.

In *Lockhart*, the court held that a regulation that required "sufficient nursing staff . . . to meet the needs of patients" was a "general goal," not a "specific minimum standard." 66 Cal. Rptr. 3d at 77. As such, it was "not the type of regulation 'prescribing minimum standards for equipment, personnel or facilities,' the breach of which can give rise to liability under Government Code section 855." *Id.* Similarly, in *Brackin*, the same regulation about staffing and a separate regulation establishing that patients have the right "to be free from mental and physical abuse" did not "specifically direct the manner in which the broad goals they set out are to be attained" and thus did not overcome the statutory immunity in Government Code section 854.8(a). 2016 WL 3185021, at *7; see also *Spath v. Cnty. of Santa Clara*, No. 22-CV-07599-JSC, 2023 WL 4411961, at *6 (N.D. Cal. July 7, 2023) [holding that statutes that require an assessment of mentally ill patients and give them the right to treatment services and prompt care are too general to establish liability under Government Code section 855].

The regulation at issue here, which requires "[a] method of assuring privacy," likewise does not create a specific minimum standard by which state hospitals could be held accountable. It provides a broad goal, not specific direction. *See Brackin*, No. C 15-03351 WHA, 2016 WL 3185021, at *7. Accordingly, this regulation cannot be applied to defeat DSH's immunity.

### D. Conclusion

In conclusion, DSH retains statutory immunity under Government Code section 854.8 since plaintiff has failed to plausibly allege, as required by section 855, that her injury was "proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or

8

facilities required by any statute or any regulation . . . prescribing minimum standards for equipment, personnel or facilities." Cal. Gov't Code § 855.

Since DSH retains statutory immunity, the Court need not consider whether plaintiff has otherwise stated a valid claim.

## II.   Doe Defendants

The SAC brings causes of action against a number of Doe defendants. Although the use of "Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wiltsie v. Cal. Dep't of Corrections*, 406 F.2d 515, 518 (9th Cir. 1968), situations may arise where the identity of alleged defendants cannot be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover their identities or that the complaint should be dismissed on other grounds. *See Gillespie*, 629 F.2d at 642; *Velasquez v. Senko*, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986).

An important next step in this case will be for plaintiff to identify the Doe defendants.

## CONCLUSION

For the foregoing reasons, the Court GRANTS DSH's motion to dismiss with prejudice Claims 5, 7, and 8 against DSH. As Claims 7 and 8 were asserted only against DSH, those claims are dismissed with prejudice in their entirety. Claims 1 through 6 will proceed against the individual defendants only. The Court does not grant further leave to amend and DSH is dismissed as a defendant in this case.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

9

The Court sets a case management conference for Friday, April 4, 2025, at 2:30 p.m., to be conducted over Zoom videoconference. A joint case management statement is due no later than Friday, March 28, 2025. The parties shall come to the case management conference prepared to discuss a schedule for the balance of the case.

**IT IS SO ORDERED**.

Dated: February 26, 2025

_____
SUSAN ILLSTON
United States District Judge