UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLA ELIZABETH MARTINEZ,<br>Plaintiff,<br>v.<br>CINDY BLACK, et al.,<br>Defendants. | Case No. 23-cv-04247-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS TAC**<br><br>Re: Dkt. Nos. 77, 78 |

Now before the Court is defendants' motion to dismiss the Third Amended Complaint. This matter came on for hearing on January 9, 2026.

## BACKGROUND

### I. Factual Background

The Court assumes that the allegations of the complaint are true for purposes of deciding the motion to dismiss. Plaintiff Marcella Elizabeth Martinez was an involuntarily committed patient at Napa State Hospital when the relevant events occurred. Dkt. No. 64 ("TAC") ¶ 1. Upon plaintiff's arrival on February 24, 2020, she was assigned to Unit T-11, which "consists of a series of dormitory-style rooms connected by a hallway with a single bathroom and shower facilities for all patients housed in the unit." *Id.* ¶¶ 12, 17. Each room contains four beds, and plaintiff was assigned to a bedroom that was also occupied "by an individual presently known to the state of California as Lynnsey Eva Karla Braun ('Braun')." *Id.* ¶¶ 13, 18. According to the complaint, "Braun has male genitalia, and Braun's original birth certificate identified Braun's gender as male. However, Braun self-identifies as female." *Id.* ¶ 19. Braun had been admitted to Napa State Hospital after being charged with second degree murder and adjudicated not guilty by reason of insanity. *Id.* ¶ 20.

Upon plaintiff's placement in the same bedroom with Braun, "Braun began making sexual and romantic advances toward Plaintiff." *Id.* ¶ 30. Within a week of her placement, plaintiff made her first report complaining about Braun's behavior to defendants Daniel Ferster, Hameed Jahangiri, and Elia Real (referred to in the TAC as the "Martinez Treatment Team"). *Id.* ¶¶ 6, 31. Defendants took no action in response to the first report, and plaintiff informed Braun she did not want a romantic or sexual relationship. *Id.* ¶¶ 36-37. Braun then became verbally aggressive, called plaintiff names, and made a hand gesture as if firing a handgun at plaintiff. *Id.* ¶ 38. Plaintiff reported these comments and actions to the Martinez Treatment team and they arranged a meeting. *Id.* ¶¶ 39-40. Braun found out about the meeting and, in the hallway shortly before the meeting, Braun "cast threatening looks at Plaintiff and called Plaintiff a 'fucking bitch[,]'" conduct which plaintiff also reported. *Id.* ¶¶ 41-42. In response, defendant Veronica Inocencio moved plaintiff to a different bedroom. *Id.* ¶ 44. However, Braun still "had unlimited access to Plaintiff's bedroom via the unlocked dormitory doors during the time when patients were present in Unit T-11" and "continued to utilize the shared bathroom and shower facilities at Unit T-11." *Id.* ¶ 46.

About three weeks later, in the shared bathroom facilities, Braun asked plaintiff for sex. *Id.* ¶ 48. After plaintiff responded, "no," Braun then asked plaintiff if she wanted to see Braun's penis while plaintiff was dressing after a shower. *Id.* ¶ 49. Plaintiff again said "no" and told Braun to leave her alone. *Id.* The following day, Braun told plaintiff "that Braun had been sifting through the garbage to view Plaintiff's used feminine products." *Id.* ¶ 50. Plaintiff reported these most recent incidents to her treatment team. *Id.* ¶ 52. The report was also known to other defendants, including Napa State Hospital Executive Director Cindy Black, but no investigation or further action took place. *Id.* ¶¶ 52-55.

On or about April 4, 2020, at about 5:20 p.m., Braun approached plaintiff in the Unit T-11 hallway. *Id.* ¶ 57. Braun directed plaintiff into Braun's bedroom, saying Braun "wanted to talk with" plaintiff, and then attacked plaintiff with a makeshift shank. *Id.* ¶¶ 57-65. Although plaintiff grabbed Braun's wrist as Braun attempted to stab plaintiff in the neck, Braun punched plaintiff several times in the face and then used the weapon to strike plaintiff on the back of the head several times. *Id.* ¶¶ 63-65. Hospital staff "eventually entered the room, and Braun dropped the weapon."

2

*Id.* ¶ 67. Braun was arrested and charged with attempted murder and assault with a deadly weapon. *Id.* ¶ 72. In later interviews with law enforcement, "Braun admitted that Braun had been planning the attack all day and that Braun's aim was to kill Plaintiff." *Id.* ¶ 71.

## II.  Procedural Background

On November 6, 2020, plaintiff (represented by counsel) filed suit in Napa County Superior Court against defendants Napa State Hospital, the California Department of State Hospitals ("DSH"), Cindy Black, and Does 1-50. *Martinez v. Napa State Hosp.*, Case No. 20-cv-08631-SI, Dkt. No. 1 at 8. Defendants removed the action to federal court on December 7, 2020. *See generally id.*, Dkt. No. 1. The case was assigned to the undersigned Judge. *Id.*, Dkt. No. 6. The parties stipulated to a stay while plaintiff sought her release from DSH custody. On December 5, 2022, plaintiff (through her counsel) voluntarily dismissed the action without prejudice, "pursuant to joint agreement to toll the statute." *Id.*, Dkt. No. 33.

On August 21, 2023, plaintiff (representing herself) filed the current suit against the same defendants: DSH, Black, and Does 1-50. Dkt. No. 1. Defendants answered the complaint. Dkt. No. 9. On June 21, 2024, the Court granted in part and denied in part defendants' motion for judgment on the pleadings. Dkt. No. 32. The Court denied defendants' bid for Eleventh Amendment immunity, finding they had waived immunity when they removed the original case from state court to federal court in December 2020. The Court dismissed, with leave to amend, certain claims against DSH because plaintiff had not sufficiently alleged an exception to the immunity granted by California Government Code section 845.8. Citing the parties' tolling agreement, equitable tolling, and statutory tolling, the Court rejected defendants' arguments that the claims brought under 42 U.S.C. § 1983 were untimely. The Court granted judgment on the pleadings as to certain claims against defendant Cindy Black, Executive Director of Napa State Hospital, with leave to amend. In the Order, the Court further advised that "[a]n important next step in this case will be for Martinez to identify the Doe defendants." *Id.* at 15. The Court then stayed the proceedings in order for plaintiff to be appointed counsel. Dkt. Nos. 33-34.

In September 2024, after plaintiff's new counsel was appointed, plaintiff filed a First

Amended Complaint ("FAC"). Dkt. Nos. 35-36. The FAC asserted ten claims for relief against the same collection of defendants. Dkt. No. 36. Defendant Cindy Black answered the FAC, but defendant DSH moved to dismiss the claims against it. Dkt. Nos. 41-42. After an initial round of written briefing on the motion to dismiss, the parties stipulated to the filing of a Second Amended Complaint ("SAC"). Dkt. Nos. 44-45. Defendant DSH again moved to dismiss. Dkt. No. 47.

On February 26, 2025, the Court issued an Order granting in part and denying in part DSH's motion to dismiss the SAC. Dkt. No. 53. The Court found that plaintiff's amendment still failed to state an exception to DSH's statutory immunity under Government Code section 854.8 and dismissed with prejudice the claims brought against DSH. In the Order, the Court again advised plaintiff to amend the complaint to identify the Doe defendants. *Id.* at 9.

On August 27, 2025, the parties stipulated to the filing of a Third Amended Complaint so that plaintiff could "amend her complaint to allege the names of the various fictitious defendants named in the SAC[.]" Dkt. No. 62. The Court approved the stipulation, and the TAC was filed the following day. Dkt. Nos. 63, 64.

The TAC names the following defendants: Cindy Black, Executive Director of Napa State Hospital (who has been named in this case from the beginning); Stephanie Clendenin, Director of California Department of State Hospitals; Veronica Inocencio, Unit Supervisor of T-11 at Napa State Hospital; members of Napa State Hospital's Transgender Treatment Advisory Committee ("TTAC") Danielle Bryce, Adam Richardson, David Muchin, Amarpreet Singh, Eric Khoury, and Laura Long; and members of plaintiff's treatment team Daniel Ferster, Hameed Jahangiri, and Elia Real. Plaintiff brings the following claims in the TAC: (1) 42 U.S.C. § 1983 – Failure to Protect, Fourteenth Amendment, against all defendants; (2) 42 U.S.C. § 1983 – Supervisor Liability re: Failure to Protect, against defendants Black and Inocencio; (3) 42 U.S.C. § 1983 – Invasion of Privacy, Fourteenth Amendment, against all defendants; (4) 42 U.S.C. § 1983 – Supervisor Liability re: Invasion of Privacy, against defendants Black and Inocencio; (5) Negligence, against all defendants; and (6) Negligent Supervision, against defendants Black and Inocencio. Plaintiff seeks damages, including punitive damages.

Defendants now move to dismiss, arguing that certain defendants are not proper "Doe"

1  defendants, that the statute of limitations bars claims against the new defendants, and that certain
2  defendants have immunity from suit.[1]  Defendants also argue that the claims must be dismissed for
3  failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

**DISCUSSION**

**I.  Statute of Limitations**

Defendants argue that the statute of limitations bars all claims against the newly named Doe defendants.  In its prior Order on defendants' motion for judgment on the pleadings, the Court found that the current lawsuit against defendants DSH and Black was timely pursuant to the tolling

---

[1] Defendants moved on behalf of all defendants except for Eric Khoury.  Defense counsel clarified at the hearing that they do represent Khoury and that the motion is also brought on Khoury's behalf.

5

1   agreement the parties entered into in plaintiff's earlier lawsuit. Dkt. No. 32 at 8-10. The Court also
2   found that, even apart from the tolling agreement, plaintiff's Section 1983 claims were entitled to
3   equitable tolling and were entitled to statutory tolling under California Civil Procedure Code section
4   352.1, which recognizes imprisonment as a disability that tolls the statute of limitations for a period
5   not to exceed two years.[2] *Id.* at 10-12.

6   Plaintiff argues that this lawsuit is timely under the equitable tolling principles articulated in
7   *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004). There, the Ninth Circuit held "that California's
8   equitable tolling doctrine operates to toll a statute of limitations for a claim asserted by a
9   continuously confined civil detainee who has pursued his claim in good faith." *Id.* at 930. While
10  acknowledging that "the literal language" of Section 352.1 does not cover civil detainees, the Ninth
11  Circuit found that the district court erred in failing to apply equitable tolling to Jones's Section 1983
12  action. *Id.* at 927-28. The Court explained that "in the case of a civil detainee who has acted in
13  good faith to pursue his claims, the balance tips sharply in favor of equitably tolling the statute of
14  limitations 'to ensure fundamental practicality and fairness' . . . and 'to soften the harsh impact of
15  technical rules which might otherwise prevent a good faith litigant from having a day in court.'" *Id.*
16  at 929-30 (citations omitted).

17  The Court agrees with plaintiff that the equitable tolling applied in *Jones* should apply to her
18  case with equal force.[3] As in *Jones*, plaintiff here was committed for a continuous period during
19  which the statute of limitations—without tolling—would have run. Failing to apply tolling to
20  plaintiff's action "would yield the arbitrary result" that plaintiff would have been able to bring her

---

[2] The statute reads, in part:

> If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Civ. Proc. Code § 352.1(a).

[3] The Court acknowledges that its prior Order did not address *Jones* and that the analysis of statutory tolling under *Jones* would have been different, though the ultimate outcome (i.e., that tolling applied to plaintiff's claims) would have remained the same. *See* Dkt. No. 32 at 11-12.

claims (pursuant to statutory tolling) if she had remained in penal custody and if she had not instead been found incompetent and involuntarily committed to the hospital. *See id.* at 929.

Defendants argue in reply that tolling does not apply because the newly added defendants did not receive notice of the prior lawsuit that plaintiff filed and because plaintiff has not demonstrated that she lacked the freedom and resources to pursue her claim while at Napa State Hospital. Dkt. No. 87 ("Reply") at 5-6. However, the notice requirement has no place with the type of tolling the Court applies here. The Court previously applied the notice requirement to the type of tolling that may apply due to the pendency of a prior lawsuit. *See* Dkt. No. 32 at 10-11 (citing *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003)). Section 352.1, which provided the grounds for equitable tolling in *Jones*, contains no notice requirement; it simply extends the relevant statute of limitations by up to two years. Moreover, defendants' argument that plaintiff has not shown she lacked access to resources or was unable to pursue her claims while at Napa State Hospital ignores the record in the precursor case. The parties in that case—in which defendants were represented by the same counsel as here—continuously sought stays of the litigation due to the complications that arose from plaintiff's commitment. *See Martinez*, Case No. 20-cv-08631-SI, Dkt. Nos. 13, 17, 21, 23. Those same complications ultimately led the parties to negotiate an agreement for plaintiff to voluntarily dismiss the case, while tolling the statute of limitations, pending her release from Napa State Hospital. For defendants now to claim that plaintiff was able to litigate her claims and conduct an investigation into the identities of the Doe defendants is disingenuous, given this procedural history.

The attack on plaintiff occurred on April 4, 2020, and plaintiff remained committed at Napa State Hospital past April 4, 2022. *See* TAC ¶ 57; Dkt. No. 32 at 8-9 n.7. Plaintiff is entitled to the standard two years for bringing her Section 1983 claim in California, plus two years of equitable tolling as explained in *Jones*. Thus, plaintiff's current lawsuit, filed August 21, 2023, is not barred by the statute of limitations.

## II.     Specific Defendants

The Court next addresses arguments directed at certain defendants in particular.

7

**A.    Dr. Ferster**

Newly named defendant Daniel Ferster was a member of the treatment team assigned to manage plaintiff's treatment at Napa State Hospital. TAC ¶ 6. Defendants argue that Dr. Ferster's substitution for a Doe defendant is improper because plaintiff was not truly ignorant of his identity when she filed her prior complaints. Indeed, the original complaint filed in 2020 in the earlier iteration of this case brings two causes of action against a defendant "Doe Dr. Ferster." *Martinez*, Case No. 20-cv-08631-SI, Dkt. No. 1 at 7, 11; *see also* Dkt. No. 1 at 8, 14. Dr. Ferster was not formally named as a defendant in the prior lawsuit or in any prior complaint here until the TAC, and defendants say he was not aware of this litigation until he was named in August 2025. Dkt. No. 77 ("Mot.") at 4.

Although defendants' argument is not without force, the Court finds that Dr. Ferster may properly be substituted into the Doe defendant placeholder under California law. For Section 1983 claims, federal courts apply the limitations period for personal injury claims in the forum state, here California. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985). The California relation-back rule for Doe defendants applies as well. *See Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1463-64 (9th Cir. 1988), *vacated on other grounds*, 490 U.S. 1987 (1989), *previous decision reinstated*, 886 F.2d 235 (9th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Under California procedure, there is no requirement that the actual defendants receive notice of suit within the limitations period, unlike the requirement in Federal Rule of Civil Procedure 15(c). *See id.* at 1463; Cal. Civ. Proc. Code § 474. Under the California rule, an actual defendant may be substituted for a fictitious (Doe) defendant within three years from the date the suit is commenced. *See* Cal. Civ. Proc. Code § 583.210(a); *Cabrales*, 864 F.2d at 1463; *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986).

Moreover, the Court agrees with plaintiff that her allegations that she was ignorant of Dr. Ferster's true identity are sufficient, at least at this stage. California law provides, "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ." Cal. Civ. Proc. Code § 474. In analyzing this statute, the Ninth Circuit has explained that "California's policy in favor of

1 litigating cases on their merits requires that the fictitious name statute be liberally construed."
2 *Lindley*, 780 F.2d at 801. Although the plaintiff must have been "genuinely ignorant" of the Doe
3 defendant's identity when she filed the original complaint, "the section 474 relation-back doctrine
4 applies even if that ignorance is the result of the plaintiff's negligence." *See Woo v. Super. Ct.*, 75
5 Cal. App. 4th 169, 177 (1999); *see also Ramirez v. City of Hayward*, No. 14-CV-01264-MEJ, 2015
6 WL 4880976, at *9 (N.D. Cal. Aug. 14, 2015) (denying defendant's bid for summary judgment on
7 statute of limitations grounds) (citing *Woo*, 75 Cal. App. 4th at 177). Here, plaintiff has alleged that
8 she was ignorant of the true identity of Dr. Ferster when she filed this suit. *See, e.g.*, SAC ¶ 1; *see
9 also* Dkt. No. 80 ("Opp'n") at 8-9. Whether she was indeed "genuinely ignorant" of Dr. Ferster's
10 identity is a factual dispute best left for another day. As explained above, plaintiff timely
11 commenced suit by filing this case on August 21, 2023. Because her August 2025 Third Amended
12 Complaint naming Dr. Ferster was filed within three years, the substitution of Dr. Ferster as a Doe
13 defendant was timely under California law.

### B. Dr. Clendenin

The Court's analysis differs, however, with respect to Dr. Clendenin. Defendants argue that Dr. Clendenin's identity as Director of DSH was publicly available information and so plaintiff could not have been "ignorant" of Dr. Clendenin's identity when she first filed the complaint.

The TAC, for the first time, describes DSH Policy Directive 3118 as a source of plaintiff's injury. *See* TAC ¶¶ 8-11. The directive instructed each hospital in the DSH system to establish a Transgender Treatment Advisory Committee that would, among other things, "review cases for appropriate housing recommendations." *Id.* ¶ 9. The TAC names Dr. Clendenin as a defendant because she is the one who issued the policy directive, in April 2019. *See id.* ¶ 8. Plaintiff argues that she was previously ignorant of Dr. Clendenin's involvement in setting the policies that plaintiff alleges led to her injury. Opp'n at 9.

Looking to the original complaint itself, the Court agrees with defendants that Dr. Clendenin is not properly substituted for a Doe defendant in the original complaint. The original complaint names Does 1-50 and calls out the following Doe defendants in particular: "Defendant Doe, Chief,

9

1  Protective Services and Security" at Napa State Hospital; "Defendant Doe Dr. Fester [sic],
2  Psychologist (Health Facility Clinical Safety)" at Napa State Hospital; "Defendant Doe Dr. J, a
3  Psychologist (Health Facility Clinical Safety)" at Napa State Hospital; "Defendant Doe, Unit
4  Supervisor" at Napa State Hospital; and "Defendant Doe, Clinical Social Worker
5  (Health/Correctional Facility)" at Napa State Hospital. Dkt. No. 1 ¶¶ 13-22. None of these fit the
6  description of Dr. Clendenin, Director of the statewide Department of State Hospitals. In her
7  opposition brief, plaintiff specifically points to the following paragraph from her original complaint:
8  "Upon information and belief, other administrators, supervisors and personnel of Napa State
9  Hospital, Does 1-50, also have responsibility for the development and implementation of policies
10 and procedures for security, including training and supervision of Napa State Hospital personnel."
11 Opp'n at 9 (citing Dkt. No. 1 ¶ 15). However, this paragraph, like the others, focuses on Doe
12 defendants at Napa State Hospital, not on a statewide official setting statewide policy. Because Dr.
13 Clendenin is not properly substituted for any Doe defendant described in the original complaint,
14 plaintiff cannot avail herself of California's relation-back doctrine for Doe defendants. Plaintiff
15 would have needed to file suit against Dr. Clendenin within four years after the April 2020 attack
16 (two years under the personal injury statute and two additional years for equitable tolling). Thus,
17 plaintiff's addition of Dr. Clendenin as a defendant in the TAC filed in August 2025 is too late.

18 The Court additionally finds that the allegations against Dr. Clendenin are lacking on their
19 face. Plaintiff concedes that any suit against Dr. Clendenin in her official capacity would be barred
20 by Eleventh Amendment immunity and asserts in her opposition that Dr. Clendenin is sued in her
21 personal capacity.[4] Opp'n at 9, 13. But there are no plausible allegations tying Dr. Clendenin to
22 the incident involving Braun and plaintiff. The TAC lumps Dr. Clendenin (the director of a
23 California statewide agency) with Napa State Hospital personnel. The TAC alleges, for instance,
24 that Dr. Clendenin was aware of the risk Braun posed and participated in the decision to place
25 plaintiff in Unit T-11 alongside Braun. *See* TAC ¶¶ 29, 79, 102-103, 121. As to Dr. Clendenin,
26 these allegations are simply implausible.

---

[4] The TAC does not specify whether any defendant is being sued in an official or individual capacity.

10

The claims against Dr. Clendenin are dismissed with prejudice. Leave to amend is not granted because amendment could not cure the statute of limitations defect.

### C.   Transgender Treatment Advisory Committee

Defendants also argue that the six individual defendants who comprise the Napa State Hospital Transgender Treatment Advisory Committee should be dismissed under Eleventh Amendment immunity. In response, plaintiff states that she is suing these individuals in their individual rather than official capacities and therefore Eleventh Amendment immunity does not apply. Opp'n at 12-14. In the reply brief, defendants raise the new argument that the TTAC defendants should be dismissed because the complaint does not "validly allege the 'integral participation' of each defendant." Reply at 8-9.

Typically, the Court will not consider arguments raised for the first time in a reply brief. And even setting that aside, the Court disagrees with defendants that the allegations regarding the Transgender Treatment Advisory Committee's actions are insufficient. The TAC alleges that the defendants named as part of the Napa State Hospital Transgender Treatment Advisory Committee "were aware that Braun posed a specific heightened risk of danger to other patients due to Braun's general history of violence and particular history of violence against women[,]" made the decision to place Braun in Unit T-11, were aware of plaintiff's three reports regarding Braun's unwanted and threatening conduct, and took no steps to investigate or otherwise protect plaintiff from Braun. TAC ¶¶ 24, 29, 33, 43, 52-56. The Court finds these allegations sufficient to require the individual TTAC members to remain as defendants at this stage. Although plaintiff will, at the end of the day, need to prove liability as to each individual member of the TTAC, *see Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996), the Court will not require such detailed factual allegations at this stage, with discovery still underway.

The cases that defendants cite in their reply do not help them. *See* Reply at 8 (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Chuman*, 76 F.3d at 293; *Boyd v. Benton Cnty.*, 374 F.3d 773, 777 (9th Cir. 2004)). Those cases were: dismissed based on a total lack of allegations regarding the individual defendants' involvement (*Barren*); decided after trial based on a flawed

11

jury instruction (*Chuman*); or decided on summary judgment (*Boyd*). None of them stand for the proposition that a plaintiff must set forth in the pleadings each individual defendant's precise involvement, when the defendants comprise part of a team. Indeed, in the portion of *Boyd* relevant to this issue, the Ninth Circuit affirmed the district court's rejection of the officers' argument that only the officer who threw the flash-bang device could be liable for a constitutional violation, explaining that the "integral participation" requirement under the case law "does not require that each officer's actions themselves rise to the level of a constitutional violation." 374 F.3d at 780.

The Court denies defendants' motion to dismiss the defendant TTAC members from the case.

### D. Psychotherapist Immunity

Defendants argue that Muchin, Singh, Inocencio, Ferster, Jahangiri, Long, and Real have psychotherapist immunity from plaintiff's claims that they failed to protect her against inpatient Braun's violence, under California Civil Code section 43.92. Of these defendants, Muchin, Singh, and Long were members of the hospital's Transgender Treatment Advisory Committee and Ferster, Jahangiri, and Real "were members of the treatment team assigned to manage Plaintiff's treatment." TAC ¶¶ 4, 6. Plaintiff argues that defendants misapply the psychotherapist immunity and that it does not extend to situations such those alleged here.

California Civil Code section 43.92 provides, in part, that "[t]here shall be no monetary liability on the part of, and no cause of action shall arise against, any person who is a psychotherapist as defined in Section 1010 of the Evidence Code in failing to protect from a patient's threatened violent behavior or failing to predict and protect from a patient's violent behavior except if the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims." Cal. Civ. Code § 43.92(a).

Here, plaintiff is correct that defendants misapply the psychotherapist immunity. They essentially seek "absolute immunity" for all the individual defendants who are psychotherapists. But the statute stands for the proposition that "otherwise confidential information conveyed to a therapist loses its 'protected' status once it provides the reasonable cause for the therapist to believe

12

1  the patient presents a significant danger to himself, herself or others." *Ewing v. Goldstein*, 120 Cal.
2  App. 4th 807, 817 (2004). The statute is simply inapplicable to the facts presented here. There are
3  no allegations in the TAC that any therapist should have taken action based on something Braun
4  disclosed to them in therapy. Nor does plaintiff allege that she told the therapists anything in
5  confidence. Rather, she made reports to defendants of Braun's concerning and threatening behavior
6  and expected them, as Napa State Hospital employees, to do something about it. *See Brackin v. Cal.*
7  *Dep't of State Hosps.*, No. C 15-03351 WHA, 2016 WL 3185021, at *6 (N.D. Cal. June 8, 2016)
8  (denying Napa State Hospital employees Section 43.92 immunity from negligence claim brought
9  by inpatient attacked by fellow inpatient). In an apparent concession, defendants do not address this
10 argument further in their reply brief.

The Court declines to dismiss any of the defendants based on psychotherapist immunity.

### III. Failure to State a Claim

The remainder of defendants' motion targets each of plaintiff's claims as insufficient under Federal Rule of Civil Procedure 12(b)(6).

#### A. Supervisory Liability (Claims Two and Four)

Defendants move to dismiss the claims for supervisory liability brought against defendants Black and Inocencio under Section 1983. The TAC alleges supervisory liability under Section 1983 for a violation of the Fourteenth Amendment, Failure to Protect (Claim Two) and Invasion of Privacy (Claim Four). Defendants argue that these claims are based on a theory of vicarious liability that is not allowed under the law and that the factual allegations of supervisory liability are inadequate. Plaintiff argues in response that she "does not allege any claims based on a theory of vicarious liability" but that she "has alleged that the supervisors themselves acted or failed to act with a conscious disregard to Plaintiff's rights." Opp'n at 18. She argues that "[t]he actions and failures to act of the hospital administrators create personal liability for them, not simply vicarious liability." *Id.*

"Generally, supervisory officials are not liable for the actions of subordinates on any theory

13

of vicarious liability under 42 U.S.C. § 1983." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (citing *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). The Ninth Circuit has explained that "[a] supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* (internal quotation marks and citations omitted). "In order to adequately plead such a claim, 'allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.'" *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1216 (9th Cir. 2011)).

The Court agrees with defendants that Claims Two and Four must be dismissed. Contrary to the position plaintiff takes in her opposition brief, the allegations of the TAC themselves show that Claims Two and Four are premised on a theory of vicarious liability. The TAC does not allege any plausible facts showing Black or Inocencio's involvement as supervisors but repeatedly focuses on the conduct of their subordinates. *See, e.g.*, TAC ¶¶ 89 ("the acts and/or failures to act **of the subordinates** of Defendant Cindy Black and Defendant Veronica Inocencio deprived Plaintiff of the right to safe conditions . . . **through the subordinates'** decision to place Braun in Unit T-11 with Plaintiff . . ."); (emphases added), 112, 115 ("Defendant Cindy Black and Defendant Veronica Inocencio engaged in conduct that showed a reckless or callous indifference to the deprivation **by the subordinates** . . ."). Any allegations directed to Black or Inocencio's own conduct as supervisors are conclusory. *See, e.g., id.* ¶¶ 90-91, 113-114. To the extent plaintiff is alleging that Black or Inocencio themselves engaged in conduct that deprived plaintiff of her constitutional rights, those claims are already stated against Black and Inocencio in Claims One (Failure to Protect) and Three (Invasion of Privacy), which are brought against all defendants.

Claims Two and Four are dismissed from the case with prejudice. Given the late stage of this case, that plaintiff has already filed three amended complaints with the assistance of counsel, and that defendant Black has been in this case from the beginning (indeed, since the earlier-filed 2020 lawsuit), further leave to amend these allegations will not be granted.

14

### B. Failure to Protect (Claim One)

Defendants seek to dismiss Claim One, which alleges a constitutional failure to protect the plaintiff, a patient involuntarily committed at a state hospital, from harm by another inpatient. Defendants argue that Claim One fails because, they say, plaintiff "fails to allege any specific history of violence" by Braun or any prior conduct to indicate that Braun "was a violent threat to Plaintiff." Mot. at 12. Defendants are incorrect.

At the outset, the Court notes that it is up for debate whether plaintiff must allege the facts regarding Braun's history of violence that defendants say she must. *See Brackin*, 2016 WL 3185021, at *4 (discussing *Estate of Conners by Meredith v. O'Connor*, 846 F.2d 1205 (9th Cir. 1988)). Even so, the allegations of the TAC are sufficient. The TAC alleges that Braun was committed to Napa State Hospital "after being adjudicated not guilty by reason of insanity on a charge of second degree murder." TAC ¶ 21. The TAC also alleges that plaintiff made three reports of Braun's concerning conduct in the weeks leading up to the April 2020 incident in which Braun stabbed plaintiff. More specifically, plaintiff made reports: (1) after "Braun began making sexual and romantic advances toward Plaintiff" that made plaintiff uncomfortable; (2) after Braun "became verbally aggressive" when plaintiff rebuffed those advances, calling plaintiff epithets and aggressively making "a hand gesture as if Braun was firing a handgun at Plaintiff[;]" and (3) after Braun approached plaintiff in the shared shower facilities and "asked Plaintiff for sex, including oral sex" and then—after plaintiff said "no"—"slid open the shower curtain and asked Plaintiff if she wanted to see Braun's penis." *Id.* ¶¶ 30-32; 37-38; 47-49. Plaintiff alleges that the members of her treatment team, the members of the Napa State Hospital Transgender Treatment Advisory Committee (who placed Braun in Unit T-11), and supervisors Black and Inocencio were aware of these three reports. *Id.* ¶¶ 33, 43, 52.

Thus, the facts alleged here are not so different from the case that defendants cite, *Estate of Conners*. There, a Napa State Hospital inpatient was murdered by another inpatient who was permitted to roam the grounds "despite his homicidal propensities[.]" *See* 846 F.2d at 1206-07. Similar to Braun, who was committed following charges of second-degree murder, the attacker in *Estate of Conners* "had been admitted to Napa State Hospital after he pled not guilty by reason of

15

1    insanity to a charge of rape and murder of another young woman." *See id.* at 1207 n.2; TAC ¶ 21.
2    And two to three weeks before the murder of the fellow inpatient, the attacker committed an assault
3    with a deadly weapon and attempted rape on another female inpatient. *Id.* The Ninth Circuit
4    explained, "The man's character was thus well known to someone at the hospital, if not to these
5    named defendants." *Id.* The district court had denied the motion by Napa State Hospital officials
6    for summary judgment on qualified immunity grounds, finding genuine issues of material fact
7    existed. The Ninth Circuit affirmed.

8    Here, the allegations regarding Braun's known violent propensities, and that Braun's threats
9    were directed at plaintiff in particular, are far from conclusory. Rather, they bear striking similarity
10   to the facts of the case in *Estate of Conners*. It does not reflect well on defendants to take the
11   position that a gesture of firing a handgun at someone does not constitute a "threat of violence" or
12   that an inpatient asking another inpatient for sex in the shower does not create "any indicia of a
13   safety concern." *See* Mot. at 14-15.

14   The Court denies defendants' motion to dismiss Claim One.

### C.    Invasion of Privacy (Claim Three)

17   Defendants argue that plaintiff has failed to state a claim for a constitutional violation of her
18   right to privacy under the Fourteenth Amendment, both for lack of factual allegations and on
19   qualified immunity grounds. Plaintiff alleges that, at all relevant times, "it was clearly established
20   that patients committed in state hospitals have a right to privacy, including a right to bathroom,
21   shower, and sleeping conditions outside the view of patients of the opposite sex." TAC ¶ 100. She
22   alleges defendants violated this right "through their decision to place Plaintiff in Unit T-11 alongside
23   Braun, where Plaintiff and Braun would share bathroom and shower facilities and where there was
24   no locked door preventing Braun from entering Plaintiffs [sic] room at any time the rooms were
25   occupied, and in their decision to initially place Braun in the same room as Plaintiff." *Id.* ¶ 102.

26   The defense of qualified immunity protects "government officials . . . from liability for civil
27   damages insofar as their conduct does not violate clearly established statutory or constitutional rights
28   of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier*, 533 U.S. at 201). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id.* at 236.

Here, the Court finds that Claim Three fails at the outset because plaintiff has not shown that the right she seeks to vindicate was clearly established in February to April, 2020, when the events at issue took place. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' . . . In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted). Plaintiff cites no authority for her position that it was clearly established as of spring 2020 that it would violate the constitutional rights of a female patient committed to a state mental institution to house her with a male-to-female transgender patient. The TAC, rather, asserts that Braun was placed in Unit T-11 pursuant to a California statewide policy on treatment of transgender and gender-nonconforming patients. *See* TAC ¶¶ 8-11. Plaintiff concedes in her brief that "the vast majority of case law" on the right to bodily privacy "involves claims that state officials viewed the naked body of an institutionalized person of the opposite sex[,]" and the cases she cites describe those scenarios. *See* Opp'n at 16-17 (citing *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1161 (9th Cir. 2020); *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017)). Far from being clearly established, the question whether transgender persons may use shared bathroom or locker facilities with non-transgender persons is being actively litigated in the courts today, with some courts coming down on the opposite side of the issue from what plaintiff advocates here. *See, e.g., Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526, 530-31 (3d Cir. 2018) (affirming denial of preliminary injunction to plaintiffs who sued to stop transgender students from accessing shared bathrooms and locker

1    rooms, finding "the appellants are unlikely to succeed in establishing a violation of their right to

2    privacy based on a transgender student potentially viewing them in a state of undress in a locker

3    room or restroom"); *Magalengo v. Pa. Interscholastic Athletic Ass'n*, 796 F. Supp. 3d 28 (E.D. Pa.

4    2025) (dismissing bodily privacy claim on same grounds). And even if the right has been established

5    in other contexts, it is far from clear that those contexts would map onto the relevant setting here,

6    that of a state-run hospital for civilly committed patients. *See Boyertown*, 897 F.3d at 528 ("The

7    constitutional right to privacy is not absolute. It must be weighed against important competing

8    governmental interests.") (citations omitted).

9        The Court finds defendants are entitled to qualified immunity on Claim Three and therefore

10   dismisses Claim Three with prejudice.

### D. Negligence and Negligent Supervision (Claims Five and Six)

13       Finally, defendants move to dismiss the negligence and negligent supervision claims on

14   timeliness grounds. Defendants argue that plaintiff failed to submit a timely claim against the

15   individual defendants as required under California Government Code section 911.2. Plaintiff argues

16   that her claim was timely and that it was proper for her to name "Does" in her government claim

17   because their identities were unknown to her. Defendants do not further address this in their reply

18   brief.

19       The Court rejected a nearly identical argument by defendants over a year and a half ago

20   when ruling on defendants' motion for judgment on the pleadings. *See* Dkt. No. 32 at 13-14. The

21   Court rejects defendants' argument for the same reasons now. As noted in the prior Order,

22   California Government Code section 910.6 allows a government claim for bodily injury to be

23   amended "at any time" before the expiration of six months after the accrual of the cause of action

24   "or before final action thereon is taken by the board, **whichever is later**, if the claim as amended

25   relates to the same transaction or occurrence which gave rise to the original claim. The amendment

26   shall be considered a part of the original claim for all purposes." Cal. Gov't Code § 910.6(a)

27   (emphasis added). Here, defendants' own records show that plaintiff amended her government

28   claim on August 25, 2020, to add claims against defendant Black and Does 1-50. Dkt. No. 78, Ex.

D at 1. Because she amended her claim naming these defendants within six months of accrual of her claim, it was timely under Government Code sections 910.6 and 911.2. *See id.*; *see also* Cal. Gov't Code § 910(e) (providing that the claim shall state "[t]he name or names of the public employee or employees causing the injury, damage or loss, **if known**") (emphasis added).[5]

The Court denies the motion to dismiss the claims for negligence (Claim Five) and negligent supervision (Claim Six).

**CONCLUSION**

For the foregoing reasons, the claims against defendant Clendenin are dismissed from this case with prejudice. The supervisory liability claims (Claims Two and Four) are dismissed with prejudice. The invasion of privacy claim (Claim Three) is dismissed with prejudice. The balance of the motion is denied.

Thus, what remain in this case are: Failure to Protect (Claim One), against all defendants except Clendenin; Negligence (Claim Five), against all defendants except Clendenin; and Negligent Supervision (Claim Six), against defendants Black and Inocencio. Per plaintiff's briefing and the discussion on the record at oral argument, all claims are brought against all defendants in their individual capacities, with the exception of defendant Black, who is sued in both her individual and official capacities.

**IT IS SO ORDERED**.

Dated: January 13, 2026

SUSAN ILLSTON
United States District Judge

---

[5] Defendants' unopposed request for judicial notice, Dkt. No. 78, is granted.