United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLA ELIZABETH MARTINEZ,<br>Plaintiff,<br>v.<br>CINDY BLACK, et al.,<br>Defendants. | Case No. 23-cv-04247-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 126 |

Now before the Court is defendants' motion for summary judgment. The Court held a hearing on November 6, 2026. For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I. Factual Background

This Order assumes familiarity with the basic allegations of this case, which are outlined in the Court's prior Orders. *See* Dkt. Nos. 32, 53, 92. This lawsuit stems from an attack on plaintiff Marcella Elizabeth Martinez by a fellow inpatient ("Patient B") while both were involuntarily committed at Napa State Hospital. On February 24, 2020, plaintiff was placed in Unit T-11, a "forensic unit" at the hospital. Dkt. No. 132-2 (Martinez Dep.) at 58:25-59:2; Dkt. No. 132-1 (Tekeste Decl.) ¶ 8. Plaintiff alleges that, following her placement in T-11, Patient B acted aggressively and inappropriately towards plaintiff. Plaintiff alleges she was subjected to unwanted sexual advances by Patient B, that Patient B called plaintiff names including racial slurs, that Patient B at one point made a gesture as if firing a handgun at plaintiff, and that Patient B had spied on

plaintiff while plaintiff was showering and asked plaintiff if she wanted to see Patient B's penis.[1] Plaintiff alleges that she reported each of these events to her treatment team. Although plaintiff was moved to a different bedroom after initially having been placed in the same shared bedroom with Patient B, plaintiff says that her treatment team and the hospital did not otherwise address plaintiff's reports. In all, plaintiff alleges she made at least three separate reports about Patient B's conduct to her treatment team. Defendants dispute what plaintiff reported and to whom.

On April 4, 2020, Patient B brought plaintiff into Patient B's bedroom and then stabbed plaintiff in the head with a makeshift knife. Patient B stabbed plaintiff four times and plaintiff had to be treated at the emergency room for head wounds. Martinez Dep. at 136:14-137:5.

## II. Procedural Background

On November 6, 2020, plaintiff (represented by counsel) filed suit in state court against defendants Napa State Hospital, the California Department of State Hospitals ("DSH"), Cindy Black, and Does 1-50. *Martinez v. Napa State Hosp.*, Case No. 20CV001162 (Napa Cnty. Superior Ct., filed Nov. 6, 2020). Dkt. No. 1 at 8. Defendants removed the action to federal court on December 7, 2020. *Martinez v. Napa State Hosp.*, Case No. 20-cv-08631-SI, Dkt. No. 1. During status conferences held in November and December 2022, plaintiff's counsel Elizabeth Zareh represented to the Court—inaccurately, it would now seem—that plaintiff remained at Napa State Hospital and was expected to remain there for another one to three years.[2] *See also id.*, Dkt. No. 26 ¶ 4 (joint case management statement). The parties informed the Court that they were working on a tolling agreement to toll the statute of limitations while plaintiff remained civilly committed. On December 5, 2022, plaintiff voluntarily dismissed the action without prejudice, "pursuant to joint agreement to toll the statute[.]" *Id.*, Dkt. No. 33.

On August 21, 2023, plaintiff (representing herself) filed the current suit against the same defendants as before: Napa State Hospital, DSH, Cindy Black, and Does 1-50. Dkt. No. 1.

---

[1] Patient B is a transgender female with male genitalia.

[2] Plaintiff testified that she was released from Napa State Hospital in July 2022. Martinez Dep. at 151:20-24, 152:10-19.



United States District Court
Northern District of California

Defendants answered the complaint. Dkt. No. 9. On June 21, 2024, the Court granted in part and denied in part defendants' motion for judgment on the pleadings. Dkt. No. 32. Among other things, the Court rejected defendants' arguments that plaintiff's claims brought under 42 U.S.C. § 1983 were untimely. The Court further advised that "[a]n important next step in this case will be for Martinez to identify the Doe defendants." *Id.* at 15. The Court then stayed proceedings in order for plaintiff to be appointed counsel. Dkt. Nos. 33, 34.

In September 2024, after plaintiff's new counsel was appointed, plaintiff filed a First Amended Complaint. Dkt. Nos. 35, 36. The parties then stipulated to the filing of a Second Amended Complaint ("SAC"). Dkt. Nos. 44, 45. On February 26, 2025, the Court issued an Order granting in part and denying in part DSH's motion to dismiss the SAC. Dkt. No. 53. The Court dismissed with prejudice the claims brought against DSH because the SAC failed to state an exception to DSH's statutory immunity under Government Code section 854.8. In the Order, the Court again advised plaintiff to amend the complaint to identify the Doe defendants. *Id.* at 9.

On August 27, 2025, the parties stipulated to the filing of a Third Amended Complaint so that plaintiff could "amend her complaint to allege the names of the various fictitious defendants named in the SAC[.]" Dkt. No. 62. The Court approved the stipulation, and the TAC was filed the following day. Dkt. Nos. 63, 64.

The TAC named the following defendants: Cindy Black, Executive Director of Napa State Hospital (who has been named in this case from the beginning); Stephanie Clendenin, Director of California Department of State Hospitals; Veronica Inocencio, Unit Supervisor of T-11 at Napa State Hospital; members of Napa State Hospital's Transgender Treatment Advisory Committee ("TTAC") Danielle Bryce, Adam Richardson, David Muchin, Amarpreet Singh, Eric Khoury, and Laura Long; and members of plaintiff's treatment team Daniel Ferster, Hameed Jahangiri, and Elia Real.

Plaintiff brought the following claims in the TAC: (1) 42 U.S.C. § 1983 – Failure to Protect, Fourteenth Amendment, against all defendants; (2) 42 U.S.C. § 1983 – Supervisor Liability re: Failure to Protect, against defendants Black and Inocencio; (3) 42 U.S.C. § 1983 – Invasion of Privacy, Fourteenth Amendment, against all defendants; (4) 42 U.S.C. § 1983 – Supervisor Liability

United States District Court
Northern District of California

re: Invasion of Privacy, against defendants Black and Inocencio; (5) Negligence, against all defendants; and (6) Negligent Supervision, against defendants Black and Inocencio. Plaintiff seeks damages, including punitive damages.

On January 13, 2026, the Court issued an Order granting in part and denying in part defendants' motion to dismiss the TAC. Dkt. No. 92. The Court dismissed the claims against defendant Clendenin with prejudice. The Court also dismissed with prejudice the supervisory liability claims (Claims Two and Four) and the invasion of privacy claim (Claim Three). The Court concluded:

> Thus, what remain in this case are: Failure to Protect (Claim One), against all defendants except Clendenin; Negligence (Claim Five), against all defendants except Clendenin; and Negligent Supervision (Claim Six), against defendants Black and Inocencio. Per plaintiff's briefing and the discussion on the record at oral argument, all claims are brought against all defendants in their individual capacities, with the exception of defendant Black, who is sued in both her individual and official capacities.

*Id.* at 19.

Defendants now move for summary judgment or summary adjudication on all remaining claims. Dkt. Nos. 126 (Mot.), 129 (Reply). In her responsive brief, plaintiff concedes that summary judgment is appropriate as to the Transgender Treatment Advisory Committee defendants (Danielle Bryce, Adam Richardson, David Muchin, Amarpreet Singh, Eric Khoury, and Laura Long) and as to defendant Cindy Black in her official capacity. Dkt. No. 128 (Opp'n) at 1 n.1.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's

case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## DISCUSSION

Defendants forward several arguments in their motion. First, they argue that defendants Daniel Ferster, Hameed Jahangiri, and Elia Real were improper "Doe Defendants" and that the statute of limitations therefore bars all claims against them. Second, defendants argue they are entitled to qualified immunity on the Section 1983 claim. On plaintiff's claims for negligence and negligent supervision, defendants argue they did not owe plaintiff a duty of care.

### I. Statute of Limitations

Defendants argue that the treatment team defendants—Dr. Daniel Ferster, Dr. Hameed Jahangiri, and Elia Real—were not proper "Doe defendants" and that therefore the claims against

United States District Court
Northern District of California

them are time-barred.[3] In particular, defendants argue that discovery has shown that plaintiff was not "genuinely ignorant" of the identities of these three individuals as required by California law on the naming of Doe defendants. Plaintiff's original complaint (in this and the prior lawsuit) referred to "Defendant Doe Dr. Fester, Psychologist (Health Facility Clinical Safety)"; "Defendant Doe Dr. J, a Psychologist (Health Facility Clinical Safety)"; and "Defendant Doe, Clinical Social Worker (Health/Correctional Facility)."[4] Dkt. No. 1 ¶¶ 16-17, 21, 24. Dr. Ferster, Dr. Jahangiri, and Real were not formally named in this case until the Third Amended Complaint, filed August 28, 2025.

Defendants have previously raised timeliness arguments. On June 20, 2024, before the treatment team defendants were specifically named in this case, the Court rejected defendants' statute of limitation argument. Dkt. No. 32 at 8-12. The Court found plaintiff's claims were not barred by the statute of limitations on several independent grounds: first, based on the tolling agreement the parties entered in the prior suit; and second, based on equitable and statutory tolling.[5]

Defendants again raised timeliness arguments in moving to dismiss the Third Amended Complaint, after Dr. Ferster, Dr. Jahangiri, and Real were added to the case. In an Order issued January 13, 2026, the Court rejected defendants' argument that the statute of limitations barred all claims against the newly named defendants. Dkt. No. 92 at 5-7. The Court also rejected Dr. Ferster's argument that plaintiff was not ignorant of his identity when she filed her prior complaints and therefore that Dr. Ferster's substitution for a Doe defendant was improper. *Id.* at 8-9. The Court explained,

> Although defendants' argument is not without force, the Court finds that Dr. Ferster may properly be substituted into the Doe defendant placeholder under California law. For Section 1983 claims, federal

---

[3] Defendants state in the introductory argument to their motion that this argument applies as well to defendant Inocencio, the T-11 Unit Supervisor, but this appears to have been an error. *See* Mot. at iii. Defendants do not reference Inocencio again in the body of their brief regarding the statute of limitations. *See id.* at 9-10.

[4] To the extent that "Dr. Fester" was a misspelling, the complaint elsewhere refers to "Doe Dr. Ferster." Dkt. No. 1 at 8, 14 & ¶¶ 94-95.

[5] The Court clarified in a later Order that equitable tolling applied. *See* Dkt. No. 92 at 6-7 & n.3.

> courts apply the limitations period for personal injury claims in the forum state, here California. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985). The California relation-back rule for Doe defendants applies as well. *See Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1463-64 (9th Cir. 1988), *vacated on other grounds*, 490 U.S. 1987 (1989), *previous decision reinstated*, 886 F.2d 235 (9th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Under California procedure, there is no requirement that the actual defendants receive notice of suit within the limitations period, unlike the requirement in Federal Rule of Civil Procedure 15(c). *See id.* at 1463; Cal. Civ. Proc. Code § 474. Under the California rule, an actual defendant may be substituted for a fictitious (Doe) defendant within three years from the date the suit is commenced. *See* Cal. Civ. Proc. Code § 583.210(a); *Cabrales*, 864 F.2d at 1463; *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986).
>
> Moreover, the Court agrees with plaintiff that her allegations that she was ignorant of Dr. Ferster's true identity are sufficient, at least at this stage. California law provides, "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ." Cal. Civ. Proc. Code § 474. In analyzing this statute, the Ninth Circuit has explained that "California's policy in favor of litigating cases on their merits requires that the fictitious name statute be liberally construed." *Lindley*, 780 F.2d at 801. Although the plaintiff must have been "genuinely ignorant" of the Doe defendant's identity when she filed the original complaint, "the section 474 relation-back doctrine applies even if that ignorance is the result of the plaintiff's negligence." *See Woo v. Super. Ct.*, 75 Cal. App. 4th 169, 177 (1999); *see also Ramirez v. City of Hayward*, No. 14-CV-01264-MEJ, 2015 WL 4880976, at *9 (N.D. Cal. Aug. 14, 2015) (denying defendant's bid for summary judgment on statute of limitations grounds) (citing *Woo*, 75 Cal. App. 4th at 177). Here, plaintiff has alleged that she was ignorant of the true identity of Dr. Ferster when she filed this suit. *See, e.g.*, SAC ¶ 1; *see also* Dkt. No. 80 ("Opp'n") at 8-9. Whether she was indeed "genuinely ignorant" of Dr. Ferster's identity is a factual dispute best left for another day. As explained above, plaintiff timely commenced suit by filing this case on August 21, 2023. Because her August 2025 Third Amended Complaint naming Dr. Ferster was filed within three years, the substitution of Dr. Ferster as a Doe defendant was timely under California law.

*Id.*

The issue now is whether plaintiff was "genuinely ignorant" of the identities of the treatment team defendants when she filed suit. In their motion, defendants point to plaintiff's deposition testimony to support their position that, "at the time plaintiff identified these Doe defendants, she was not genuinely ignorant of their names." Mot. at 10 (citing Martinez deposition excerpts ranging from 148:22-154:10).

As noted above, California Code of Civil Procedure § 474 permits the naming of a Doe defendant in the complaint "[w]hen the plaintiff is ignorant of the name of a defendant . . . ." The California Court of Appeal has explained, "Section 474 is to be construed liberally: A plaintiff may be 'ignorant' for purposes of section 474 if the plaintiff does not know of the existence of the defendant, *the defendant's actual identity* or the defendant's connection with the case or his injury." *See Gen. Motors Corp. v. Superior Ct. of Los Angeles Cnty.*, 48 Cal. App. 4th 580, 593-94 (1996) (emphasis added).

Having reviewed the evidence before it, the Court finds no reason to disturb its prior ruling. The deposition testimony on which defendants rely is rambling and at times incoherent. At most, at plaintiff's deposition, defense counsel elicited testimony that when she filed her lawsuit in November 2020 plaintiff knew Dr. Ferster was a member of her treatment team; that she wished her treatment team (Dr. Ferster, Dr. Jahangiri, Real) had done more to prevent the attacks by Patient B; and that she knew in November 2020 who her treatment team was. *See* Dkt. No. 132-2 (Martinez Dep.) at 152:22-153:21, 153:22-155:3. But it is unclear from the deposition testimony whether plaintiff knew the treatment team's real names when she filed suit. *See id.* at 149:15-150:3 (Q: "Dr. Ferster was at these treatment team meetings, right?" A: "I seen him. Yes. I remember seeing his face.")

With her opposition brief, plaintiff has filed a declaration stating, in part:

> 6. While present at Napa State Hospital, I knew Dr. Daniel Ferster only by his last name. When I left the hospital and filed my lawsuit in August 2023, I only recalled Dr. Ferster's last name. In August 2023, I did not know where Dr. Ferster was located or whether he was still practicing at Napa State Hospital. In August 2023, I was genuinely ignorant of Dr. Ferster's identity with the exception of his last name.
>
> 7. While present at Napa State Hospital, I knew Dr. Hameed Jahangiri only as "Dr. J." When I left the hospital and filed my lawsuit in August 2023, "Dr. J" was the only name I knew for Dr. Jahangiri. In August 2023, I did not know where Dr. Jahangiri was located or whether he was still practicing at Napa State Hospital. In August 2023, I was genuinely ignorant of Dr. Jahangiri's identity with the exception of the first letter of his last name.
>
> 8. When I left the hospital and filed my lawsuit in August 2023, I could not recall whether Elia Real was the social worker assigned to my treatment team in early 2020. In August 2023, I did not know where Elia Real was located or whether she was still practicing at

> Napa State Hospital. In August 2023, I was genuinely ignorant of Elia Real's identity as a member of my treatment team in early 2020.

Dkt. No. 128-2 (Martinez Decl.) ¶¶ 6-8. Defendants argue in reply that the Court should strike the declaration because it directly contradicts plaintiff's deposition testimony. Not so. Defendants elicited no testimony about whether plaintiff knew her treatment team member's full names and when. Rather, it appears defense counsel supplied the names of the treatment team at the deposition and then asked plaintiff if she "knew them." But whether she knew them by name or by sight is unclear, and the Court finds nothing contradictory between the deposition testimony and plaintiff's later-filed declaration, at least as far as ignorance of her treatment team's real names is concerned.

It is important context that at the time plaintiff filed her original complaint in November 2020, and for nearly two years thereafter, she was involuntarily committed to Napa State Hospital after having been adjudicated not guilty by reason of insanity under California Penal Code section 1026. *See* Tekeste Decl. ¶ 4. Thus, the Court is not persuaded by the case defendants cited in their reply brief and at the hearing, *Scherer v. Mark*, 64 Cal. App. 3d 834 (1976). Defendants stated that the case stands for the proposition that knowing a defendant's last name and the grounds for liability suffice to name a defendant, but the case is unclear about whether the plaintiff knew the defendant's full name when she failed to name him in her original complaint. Instead, the court affirmed the trial court's summary judgment in favor of the defendant because the evidence showed the plaintiff "was not ignorant of any facts giving her a cause of action." *See id.* at 841.[6]

The situation here is not one where the plaintiff's "conflicting and inconsistent positions permit the inference that her claimed ignorance of [the defendant's] identity was not actual and in good faith." *See Woo v. Superior Ct.*, 75 Cal. App. 4th 169, 178 (1999). Nor are there any procedural hurdles to the application of Section 474 here, as there have been in other cases. *See, e.g., id.* at 176 (criticizing the plaintiff for making no attempt to satisfy the procedural requirements for substituting a named defendant for a Doe). Defense counsel understood in August 2025 that the

---

[6] The Ninth Circuit has subsequently observed "that the holding in *Scherer,* that the plaintiff did not meet the statutory requirements of § 474 with reference to the defendant, is criticized as being inconsistent with previous decisions . . . ." *Fara Ests. Homeowners Ass'n v. Fara Ests., Ltd.*, 134 F.3d 377 (9th Cir. 1998) (citing Hogan, *California's Unique Doe Defendant Practice: A Truth Stranger Than Fiction*, 30 Stan. L. Rev., 51, 74-75 (1977)).

treatment team defendants were being substituted in, since "the parties ha[d] now undergone discovery to determine the identities of the various fictitious defendants named in the SAC[,]" and defense counsel stipulated to the filing of the Third Amended Complaint adding these defendants. *See* Dkt. No. 62 at 1-2.

This case is more akin to *Ramirez v. City of Hayward*, in which the court denied a defendant's motion for summary judgment on statute of limitation grounds where "[t]he record shows Plaintiff was genuinely ignorant of [defendant] McLeod's true identity." *See* No. 14-CV-01264-MEJ, 2015 WL 4880976, at *9 (N.D. Cal. Aug. 14, 2015). The original complaint named Officer "Jonathan" McLeod, because the police department initially gave that name to the plaintiff's counsel. The officer's real name was Richard McLeod. The district court observed, "While perhaps Plaintiff could have done more to discover the true identity of McLeod at an earlier time, section 474 does not require more" and thus the claims were timely under California law. *Id.* So too here.

## II. Qualified Immunity

Defendants next move for summary judgment on behalf of all defendants as to plaintiff's Section 1983 claim brought under the Fourteenth Amendment for failure to protect (Claim One). Defendants argue "that plaintiff cannot establish that defendants' conduct constituted a substantial departure from accepted professional judgment supporting a finding of conscious indifference amounting to gross negligence[;]" that defendants are entitled to qualified immunity for following a policy of nondiscrimination as to transgender patients; and that Inocencio cannot be liable because she was not working on the weekend of the attack. Mot. at iii, 12-14.[7]

### A. *Youngberg* Professional Judgment Standard

"A government official is entitled to qualified immunity unless the plaintiff raises a genuine issue of fact showing (1) a violation of a constitutional right, and (2) that the right was clearly

[7] In light of plaintiff's concession that summary judgment is proper as to Cindy Black in her official capacity and as to the TTAC, this Order does not address the arguments raised on those points.



United States District Court
Northern District of California

established at the time of [the] defendant's alleged misconduct." *Alexander v. Nguyen*, 78 F.4th 1140, 1144 (9th Cir. 2023) (quoting *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). "The court may address these issues in either order." *Id.* (citing Evans, 997 F.3d at 1064-66).

"Involuntarily committed patients in state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions by the hospital administrators." *Ammons v. Washington Dep't of Social & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011). In *Youngberg v. Romeo*, 457 U.S. 307 (1982), the Supreme Court "explained that liability may be imposed for failure to provide safe conditions 'when the decision made by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Ammons*, 648 F.3d at 1027 (quoting *Youngberg*, 457 U.S. at 323). Since *Youngberg*, "the Ninth Circuit has repeatedly recognized the Fourteenth Amendment right of involuntarily committed patients to safe confinement conditions." *Id.* at 1028 (citations omitted). The *Youngberg* standard "considers whether a hospital official's conduct diverges from that of a reasonable professional. . . . To impose liability, the professional judgment standard requires a finding of conscious indifference amounting to gross negligence." *Alexander*, 78 F.4th at 1145 (citations and internal quotation marks omitted). "[T]he *Youngberg* professional judgment standard is 'necessarily an *objective* test.'" *Ammons*, 648 F.3d at 1029 (quoting *Neely v. Feinstein*, 50 F.3d 1502, 1508 (9th Cir. 1995)).

The parties do not dispute that plaintiff's right to safe conditions of confinement was clearly established at the time of the events in question. The parties also agree that the *Youngberg* professional judgment standard applies. The question, then, is whether plaintiff has raised a genuine issue of fact regarding whether her constitutional rights were violated. *See Alexander*, 78 F.4th at 1144.

The Court finds plaintiff has raised a genuine issue of material fact via the report from psychiatrist Aaron Kheriaty, M.D. Dr. Kheriaty opines, *inter alia*, "Standards of inpatient psychiatric care and patient safety clearly indicate that steps should have been taken to protect

United States District Court
Northern District of California

Martinez from [Patient B], including moving [Patient B] to a unit or wing where [Patient B] would not have immediate access to her." *See* Dkt. No. 128-3, Ex. B (Kheriaty Rep.) ¶ 12. Dr. Kheriaty further opines that the attack on plaintiff "was preventable and could have been avoided had the defendants acted according to ordinary clinical and administrative standards of care for managing hospitalized psychiatric patients." *Id.*

In their motion, defendants rely largely on the Ninth Circuit's decision in *Alexander*. There, the appellate court affirmed summary judgment in favor of the defendant, a psychiatrist in a state hospital whom the plaintiff (a pretrial detainee) sued after having been attacked by a fellow patient on two occasions about ten days apart. The victim sued the psychiatrist in charge of his unit over injuries stemming from the second attack. At summary judgment, the doctor supplied an affidavit from a third-party expert attesting to the applicable standard of care in responding to patient-on-patient violence and opining that Dr. Nguyen had met or exceeded the standard of care. *See id.* at 1143-44. The plaintiff offered no evidence to dispute what Dr. Nguyen had put forward. The Ninth Circuit affirmed on the grounds that the plaintiff "offered no evidence that Dr. Nguyen failed to act reasonably, let alone that he was 'more than negligent' when he decided not to transfer Alexander or the other patient after [the first attack]." *Id.* at 1145.

Here, by contrast, there is a material dispute regarding whether and to what degree defendants violated the professional judgment standard. The only evidence in the record regarding the applicable standard of care is the evidence from plaintiff's expert, who opines that the standard of care was violated. Defendants have provided declarations from the individual defendants, as well as from Patient B's treating psychologist Dr. Tekeste, attesting that they believe they acted reasonably under the circumstances. But the applicable professional judgment standard is an objective one. *See Ammons*, 648 F.3d at 1029. Because material factual disputes remain, summary judgment for defendants is not warranted on Claim One.

### B. Liability Based on Transgender Housing Policy

Defendants make an additional argument that goes to the second prong of qualified immunity: whether defendants violated a clearly established right by housing plaintiff with a

United States District Court
Northern District of California

transgender female patient. Mot. at 12-13. Defendants argue that it was not clearly established as of February 24, 2020 (when plaintiff was placed in Unit T-11), that it would violate a cisgender female inpatient's constitutional rights to house her with a transgender female inpatient. But defendants misunderstand plaintiff's theory. Plaintiff does not assert that housing her with a transgender patient violated plaintiff's constitutional rights per se. Rather, "Plaintiff is seeking relief on a claim that Defendants acted with conscious indifference to a known threat to Plaintiff's safety" by housing her with Patient B in particular. *See* Opp'n at 19. Defendants' bid for qualified immunity on these grounds is denied.

**C. Defendant Inocencio**

As to defendant Inocencio in particular, Inocencio argues that she cannot be liable on Claim One because she "was not working or physically present at DSH-Napa on April 4, 2020[.]" Mot. at 14 (citing Dkt. No. 126-6 (Inocencio Decl.) ¶ 8). Inocencio's argument focuses on whether she was responsible for training staff to prevent patients from entering the rooms of other patients and whether she could have enforced the rule against patients entering each other's rooms when Inocencio was not present on the day of the attack. *See id.* But plaintiff's theory of liability is premised in part on Inocencio's purported role in deciding whether plaintiff or Patient B should be moved to a different unit. Opp'n at 22 (citing Black Dep. at 96:12-24; Inocencio Dep. at 21:7-23). Inocencio's declaration states that she "had no authority to request the transfer of patients to other units[,]" but the deposition testimony from Black and Inocencio indicates that the unit supervisor plays a role in transfers and that transferring a patient is a group decision. Inocencio has failed to demonstrate the absence of a genuine issue of material fact and the Court finds she is not entitled to judgment as a matter of law on Claim One.[8]

---

[8] At the hearing, defendants raised a new argument as to defendant Cindy Black, that she is entitled to qualified immunity in her individual capacity due to her lack of personal involvement in plaintiff's case. This Order does not address this argument because defendants did not move for qualified immunity on these grounds in their papers. *See* Mot. at 11-18.

**III. Negligence and Negligent Supervision**

Finally, defendants Black and Inocencio seek judgment on plaintiff's claims for negligence and negligent supervision arguing that they owed no duty of care to plaintiff.

On the negligence claim, the Court finds summary judgment is precluded because factual disputes remain as to the nature and extent of Black and Inocencio's involvement with plaintiff/Patient B. Defendants assert in their motion that "a hospital executive or administrator owes no personal duty of care to a patient unless she was actually involved in the patient's care or had knowledge of the dangerous condition (Patient B)." Mot. at 20. In her opposition, plaintiff clarifies that she seeks to hold Black and Inocencio liable based on California's general standard of care, *not* based on any theory "that Defendants Black and Inocencio owed Plaintiff any duties under a heightened physician-patient standard of care." Opp'n at 22-23. Because defendants concede that California law imposes a general duty of care on everyone, *see* Reply at 13 (citing Cal. Civil Code § 1714), and because factual disputes remain as to Black and Inocencio's direct involvement with plaintiff and with Patient B, summary judgment is inappropriate.

However, the Court will grant Black and Inocencio's motion for summary judgment on the claim for negligent supervision. The basis for the negligent supervision claim is unclear, as plaintiff's theory has shifted since the filing of the TAC. In the TAC, plaintiff alleged that:

> . . . the acts and/or failures to act of the subordinates of Defendant Cindy Black and Defendant Veronica Inocencio were negligent through (1) the subordinates' decision to place [Patient B] in Unit T-11 with Plaintiff, (2) the subordinates' willful failure to conduct any analysis of Plaintiff's reports, and (3) the subordinates' willful failure to implement any measures to protect Plaintiff's privacy following Plaintiff's reports.

TAC ¶ 129. In her opposition brief, plaintiff now essentially argues that Black was responsible as hospital administrator for everything that happened at the hospital and that Black "was responsible for the admissions process at the time [Patient B] was admitted to the hospital and placed in a female wing by the admissions team." Opp'n at 23. Plaintiff argues Inocencio "did not act with ordinary care in the conduct of her job because she failed to ensure that [Patient B's] possessions were searched and she maintained a unit culture wherein many rules were left unenforced. Additionally, she failed to ensure that adequate staff were present to supervise Unit T-11 on the weekend of April

4, 2020." *Id.*

The record does not bear out plaintiff's theory for negligent supervision. Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee. *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006). Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm then materializes. *Id.* In other words, "Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339-40 (1998). This theory of liability is not supported by the record before this Court.

To the extent that plaintiff asserts Black and Inocencio themselves acted negligently in a way that harmed plaintiff, that is already stated in the negligence claim.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS summary judgment as to defendants Danielle Bryce, Adam Richardson, David Muchin, Amarpreet Singh, Eric Khoury, and Laura Long and as to defendant Cindy Black in her official capacity. The Court GRANTS summary judgment for defendants Black and Inocencio on Claim Six, for negligent supervision. The balance of the motion is DENIED.

///

In sum, the defendants who remain in this case are Cindy Black, Veronica Inocencio, Daniel Ferster, Hameed Jahangiri, and Elia Real, all in their individual capacities. This case will go to trial on: Claim One, 42 U.S.C. § 1983 – Failure to Protect, Fourteenth Amendment, against all remaining defendants; and Claim Five, Negligence, against all remaining defendants.

**IT IS SO ORDERED**.

Dated: November 6, 2026

Susan Illston

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California